WARFIELD *et al.*, Respondents, v. LINDELL, Appellant.

1. The character of a disseisin as between tenants in common is different from that of a disseisin as against strangers. This distinction is founded on the presumption that a person, who enters into possession of a tract of land having a title thereto, enters in conformity thereto; *prima facie* the entry of one tenant in common is not adverse to his co-tenants, but in support of the common title; his possession and seisin are the possession and seisin of his co-tenants.

2. One tenant in common may disseise or oust his co-tenants. To constitute an adverse possession by one tenant in common as against his co-tenants, an actual ouster, or "turning out by the heels," is not necessary; there must, however, be some notorious and unequivocal act asserting an entire ownership.

3. Whether this assertion of an entire ownership must be brought home to the *actual* knowledge of the co-tenants depends upon the character of such act of assertion. If it be a verbal assertion or declaration of entire ownership, it can be of no avail to establish an adverse possession unless brought home to the knowledge of the co-tenants.

4. When, however, the act asserting an entire ownership is of such a nature as the law will presume to be noticed by persons of ordinary diligence in attending to their own interests, and of such an unequivocal character as not to be easily misunderstood, it does not devolve upon the possessor to show that actual notice was given to the co-tenant or to prove a probable actual knowledge on his part; it is sufficient if the act is overt and notorious; if, in such case, the co-tenant is ignorant of his rights, or neglects them, he must bear the consequences.

5. A possession of land by a tenant in common for twenty-six years, and an exclusive receipt by him of the rents and profits, without any account rendered or any demand made, would not of themselves raise a legal presumption of ouster by such tenant in common of his co-tenants.

6. The solemn declarations made by a party to a suit in his petition or answer, are, if pertinent, admissible in evidence against him in behalf of persons not parties to the suit, not by way of estoppel, but by way of admission.

## Appeal from St. Louis Land Court.

This was an action in the nature of an action of ejectment brought by the plaintiffs as heirs of Nathaniel A. Ware, deceased, on the 14th of January, 1857, to recover possession of an undivided third part of lots numbered 5, 6, 7 and 8, being block No. 225 in the city of St. Louis, containing two hundred and forty feet front on Lewis street and running back to the Mississippi river. Plaintiffs claim title as follows: Smith, Bates and Lisa, in 1817, laid out an addition to the city of St. Louis. Manuel Lisa died in the year 1822. Under a judgment against the executors of Lisa, his interest, an undivided one-third, in all the lots in said addition " which were not sold by said Manuel Lisa," was levied upon by the sheriff and sold and conveyed to Oliver N. Bostwick. The sheriff's deed is dated May 19, 1826. The case of Lisa v. Lindell, 21 Mo. 128, decides that this sale

vested the title to the unsold lots in the purchaser. This title passed by mesne conveyances to Nathaniel A. Ware, ancestor of plaintiffs. The title of Ware was acquired by him in 1833.

The defendants, as the evidence showed, passed title to two undivided third parts of said block by virtue of various deeds conveying to him the interests of Bates and Smith. These deeds were executed previous to 1834, *some* previous to 1830.

The defendant in his answer, besides a general denial of the allegations of the petition, and a setting up of the statute of limitations, alleged, in substance, the following facts: That on the 27th of July, 1836, Nathaniel A. Ware, the heirs of Bates, and John Smith, filed their petition for partition against W. Smith and D. Smith, the other heirs of William Smith, setting up that they were tenants in common with the defendants of certain lots in Smith, Bates and Lisa's addition, describing them, being unsold lots in Smith, Bates and Lisa's addition; that the said Ware owned an undivided third thereof under Manuel Lisa, and the heirs of Bates one-third, and the heirs of Smith one-third; and praying partition; that a judgment was had on the 5th of August, 1836, and commissioners appointed, who made partition of certain lots between the parties and recommended others to be sold; that the said commissioners returned a plat with these proceedings, upon which certain lots, including the lots now in controversy, were marked "sold;" that after the report of the commissioners had been approved, said Ware ratified and confirmed the said partition and allotment by a deed dated June 15, 1841, to Mary Lisa. The said answer of defendant also contained the following averments: "That the defendant has been in the actual, open, notorious and continued possession of said lots 5, 6, 7 and 8 for more than twenty-nine years, claiming the same in his own right, to the exclusion of all other persons, and with the full knowledge of said Bostwick, and of said Ware, who have all along during said period acquiesced in the said adverse claim of right; and

Warfield v. Lindell.

the defendant avers, that from the said long adverse posses-
sion and claim of title and the recitals in said proceedings
in partition, and in said deeds from Ware to Lisa, the jury
may be authorized, if in their opinion they deem it proper,
to presume a deed from the said Manuel Lisa to this de-
fendant, or to some person through whom this defendant
claims."

These portions of the answer were stricken out on motion
of the plaintiffs. The defendant offered in evidence the re-
cord of the partition proceedings mentioned above. The
court excluded it. The court also excluded two deeds be-
tween said Ware and Mary Lisa, widow and devisee of Man-
uel Lisa, one dated June 15, 1841, the other dated June 11,
1846.

The plaintiffs read in evidence the answer of the defendant·
Lindell in the case of Lisa v. Lindell. This answer was filed
in the year 1854. In it the defendant stated as follows:
"Defendant will insist and show on the trial and against the
claim of plaintiff, Lisa, a title in Nathaniel Ware to the
premises claimed by the plaintiff by virtue of sale under
judgment and execution against the executors of Manuel
Lisa."

The court, at the instance of the plaintiffs, gave the fol-
lowing instructions: "I. If Lisa, Smith and Bates, being
co-tenants and owners in fee simple of the tract of land men-
tioned in the sheriff's deed to Oliver N. Bostwick, read in
evidence by plaintiffs, some time in or about the year 1817,
laid out said tract into an addition to St. Louis, as mentioned
in said deed, and said tract and said addition were well
known at the time of the levy and sale by the description
given in the sheriff's advertisement or deed, (no plat of said
addition having been filed for record up to the time of the
execution of said deed,) and if the land in dispute is within
said addition, then said deed was effectual to pass to the
purchaser, Bostwick, all the interest of said Lisa remaining
unsold therein.

"That the interest conveyed is in express terms restricted

to that actually owned or retained by Lisa at the time of his death, without any other or more special designation of the particular lots intended to be sold, can not operate to render the deed void for uncertainty.

" The defendant sets up as a defence, and alleges against the plaintiffs' right to recover, an adverse possession of the whole of said premises described in said petition for a sufficient length of time to make the statute of limitations operate as a bar to this action. In regard to this branch of the defence, the court instructs the jury as follows:

" In law, Lindell's possession either by himself or his lessee, is deemed to be also that of the plaintiffs, until some notorious act of ouster or adverse possession is brought home to the knowledge or notice of the plaintiffs, or those under whom plaintiffs derive title ; merely proving that he has been in possession of the whole premises, and has received all the rents thereof, does not establish an adverse possession.

" Whether such acts of ownership amounted to an adverse possession depends on the existence of an intent on his part to oust the said plaintiffs or those under whom said plaintiffs claim from the premises, and their knowledge of their having been done with that intent.

" If Lindell claimed the whole premises under a conveyance or conveyances purporting to convey the whole, or the interest therein now sued for in this action, his possession of the whole was adverse to the plaintiffs, and those under whom they derive title, from its commencement under said claim.

" If his claim of adverse possession is not based on such a conveyance, but on possession and acts of ownership done by him, then he must prove that such acts were done with the intent to oust the plaintiffs, and those under whom they derive title, from the premises, and that the acts and intents were brought home to the knowledge of said plaintiffs, or those under whom they claim title ; and it is only from the time of such knowledge that said acts of ownership are to be regarded as adverse.

" In order, therefore, to enable the defendants to avail

themselves of the statute of limitations as a bar to this action, the jury must be satisfied from the evidence that for twenty years next prior to the commencement of this suit said Lindell was, without interruption or intermission, in possession of the premises sued for, and that his possession during the whole of that time was adverse to the plaintiffs and those under whom plaintiffs claim title, either because held under a conveyance purporting to convey the title to the whole, or of the interest therein, now sued for in this action, or because, during all that time, he notoriously and to the knowledge of plaintiffs or those under whom plaintiffs derive title, claimed the whole adversely to and exclusive of them."

The defendant asked and the court refused the following instructions : " If the jury find from the evidence that Peter Lindell entered into the possession of the premises in question, supposing himself to be the co-tenant of Mrs. Mary Lisa, and held for himself and Mrs. Mary Lisa, to the exclusion of Martin Thomas and Thomas Ingram, and adversely to them, his possession can not be held by the jury to have been for the benefit of the plaintiffs, or those through whom plaintiffs claim.

" If the jury find from the evidence that Peter Lindell, in person or by his tenants, agent or employees, entered upon the premises in question as early as 1830 or 1831, and that he has had and held notorious, open, continuous and actual possession of said premises, in person or by his tenants or agents, from either of said years until the commencement of this suit, claiming to own the same in his own right to the exclusion of all other persons, then the jury will find for the defendant.

" If the jury find from the evidence that Peter Lindell, in person or by his tenants, agent or workmen, has had and held open, notorious, continuous and actual possession of the premises in question for twenty-six years next before the commencement of this suit, claiming to own the said premises to the exclusion of all other persons, then the jury will find for the defendant."

Warfield v. Lindell.

*B. A. Hill,* for appellant.

I. The plaintiffs, as heirs at law of Ware, are estopped by the recitals in the record of partition between Ware and the heirs of Bates and Smith, by the acts of the parties claiming under the partition, and by the deeds between Ware and Lisa confirming said partition, from denying that lots 5, 6, 7 and 8 were sold by Smith, Bates and Lisa. (Carondelet v. McPherson, 20 Mo. ——.) Lindell was a commissioner in said partition. The sheriff's sale to Bostwick was of the unsold lots. The parties knew that these lots were marked " sold" in the report of commissioners. The court erred in striking out the portion of the answer setting up this defence; so also in striking out that portion in which the facts are set forth authorizing the presumption of a deed. (Dessaunier v. Murphy, 22 Mo. 95.)

II. The petition for partition was competent evidence of the facts therein stated, although not sworn to. The deeds of Ware to Lisa are as satisfactory proof of the statements in the petition as the oath of the party would have been. (See 3 Greenl. Ev. § 274, 527 ; 3 Pick. 40 ; 28 Ala. 110 ; 33 Maine, 370 ; 3 Greenl. 316.) The deeds from Ware to Lisa should have been admitted. (6 M. & W. 668 ; 1 Greenl. Ev. § 211 ; 5 Carr. & Pay. 542 ; 8 East, 493 ; 2 Metc. 368 ; 2 Watts & S. 411 ; 11 Shepl. 139 ; 17 Conn. 441.) The court erred in its ruling upon the statute of limitations, ouster and adverse possession. The court held that the ouster must be brought home to the knowledge of the plaintiffs or those under whom they claim; that no adverse possession, however notorious, will do ; and that knowledge of plaintiffs that it was adverse must be proven to the jury ; that the jury can not infer or presume knowledge from its notoriety ; and that knowledge will not do unless it be also shown that the adverse possession was notorious. In other words, an ouster can not be presumed at all, if the title papers show that defendant was a tenant in common with those under whom plaintiff claims. Sole possession implies adverse possession. (See Co. Litt. 243 ; 1 Ld. Raym. 310 ; 2 Ld. Raym.

Warfield v. Lindell.

830 ; 2 Salk. 423 ; 1 Salk. 390 ; 1 Atk. 493 ; 5 Burr. 2008 ; Doe v. Prosser, Cowp. 217 ; 1 East, 568 ; 4 Dev. 223 ; 5 Watts, 149 ; 10 S. & R. 182 ; .Law v. Patterson, 1 W. & S. 191 ; 9 Watts, 336 ; 2 W. & S. 299 ; Jackson v. Whitbeck, 6 Cow. 632 ; 1 Caines, 90 ; Busb. 467 ; 2 Jones, Eq. 433 ; 4 Dev. 290 ; 15 Ala. 369 ; 18 Ala. 55 ; 30 Penn. 507 ; 1 Pick. 116 ; 5 Day, 188 ; 6 Dana, 426.) The possession of one tenant in common, if exclusive and without admission of the others' right, will, if continued for a great number of years— twenty-one—raise a presumption of ouster, which is a presumption of law. It is not necessary that there should be " notice." (Lodge v. Patterson, 3 Watts, 74 ; 2 Jones, 433 ; 10 S. & R. 182 ; Law v. Patterson, 1 W. & S. 191.) Sole possession of one tenant in common, and sole perception of the profits, if continued for a number of years, the period varying under the decisions from twenty, twenty-one and more years up to thirty-six, will authorize the court to submit it to the jury as a question of fact to presume an ouster ; and if such possession be continued for a still larger number of years, say forty or fifty years, the law will presume an ouster upon the mere fact of such exclusive possession and perception of profits being proved. But none of the cases make express notice or knowledge of the plaintiff, either of his rights or of the fact that he has been ousted, essential in order to authorize the jury to presume an ouster, or to presume it as a matter of law. (2 W. & S. 299 ; 4 Dev. 290 ; 5 Watts, 149 ; 1 Caines, 90 ; 4 Mass. 330 ; 3 Metc. 99 ; 6 Pick. 172.) Disseisin does not require notice ; the question of intent to oust a co-tenant is not dependent upon any notice of that intent to the owner. The intent is proven by notorious acts of exclusive possession. 2 Greenl. 275 ; 1 Mass. 483.) The cases in 3 Metc. 101 ; 3 Pet. 51 ; 7 Wheat. 121 ; 9 Cow. 530 ; 14 B. Monr. 127 ; 4 Wis. 565 ; 3 Hawks, 232 ; 1 Kern. 115, which may be cited in support of the instructions of the court in this case, do not support the ruling of the court as to the notice of the disseisin being brought home to the knowledge of the plaintiffs. The

evidence in this case as to the character of Mr. Lindell's possession is of the most conclusive character.

*Shepley*, for respondents.

I. The proceedings in partition in which Ware was a party was not competent testimony, and the court properly struck out all relating to it from the answer, and rejected it when offered in evidence. It is no evidence that Ware did not own the land that he did not include it in a proceeding for partition. The recitals in the petition can not be invoked to support a title acquired before the partition. This was a proceeding for partition of lots owned or alleged to be owned by Ware and the heirs of Smith and Bates, as tenants in common. Previous to its institution Lindell had acquired the interest of Smith and probably that of Bates in the lots in controversy, so that these lots could not be included in any proceedings between Ware and those heirs. The petition very properly spoke of the lots embraced in the partition as lots not sold. The statement was literally true. The lots in controversy in this suit were all sold by Lisa to Bostwick, and by Bates and Smith to Lindell. The deed of the sheriff to Bostwick vested in him all the title that Manuel Lisa had to the lots in controversy. (21 Mo. 127.) The answer of Lindell to the petition in the case of Lisa v. Lindell was decisive that he had no right or title to the third owned by Ware. It was in relation to the lots in controversy.

II. No possession, however long, of a tenant in common will bar his co-tenant, unless such possession was taken and continued with the intent to bar such tenant, and such acts of possession and intent were brought home to the knowledge of the plaintiffs. An ouster or disseisin is not indeed to be presumed from the mere fact of sole possession, but it may be proved by such possession accompanied with a notorious claim of exclusive right. The receipt of rent for twenty-six years is not an ouster. There must be actual notice. The intent to oust must be proven. An exclusive possession of twenty-seven years is not adverse as to tenants

in common and is not sufficient to authorize presumption of
ouster. There must be a denial of title. There was no ad-
verse possession, for the defendant, in his answer in Lisa v.
Lindell, filed in 1854, admitted our title and that he held as
co-tenant with us. (4 Mass. 326; 7 Wheat. 120; 3 How.
689; 13 Penn. 276; 5 Burr. 2604; 8 Mo. 276; 3 S. & R.
381; 4 Day, 473; 3 Metc. 99; 3 Watts, 77; 9 Cow. 530; 5
Cow. 483; 4 Coms. 61; 25 Maine, 435; 24 Wend. 221; 3
Pet. 51; 14 B. Monr. 127; 38 Maine, 213; 1 Kern. 115;
Cowp. 217; 11 East, 49; 6 Cow. 632; 6 Dana, 432.)

NAPTON, Judge, delivered the opinion of the court.

The statute of limitations having been the main ground
of defence at the trial of this case, the instructions on that
subject constitute the principal point for our consideration.

There is an admitted distinction recognized in the cases on
the subject between the character of a disseisin as against
strangers and between tenants in common. This distinction
is founded on the presumption that a person, who enters into
possession of a tract of land having a title thereto, enters in
conformity to that title. No presumption will be entertained
that a man means to do an unlawful act; and if the title he
has gives him a right to enter on the land, his entry is attri-
buted to that title. If, then, one tenant in common enters
upon the land, his entry and possession are not esteemed
*prima facie* adverse to his co-tenants, but in support of the
common title; and his possession and seisin is the possession
and seisin of the others. (Cruise, Dig. tit. 20, § 14.)

That one tenant in common may disseise or oust the others
is also very well established; but it is not so easy to deter-
mine from the authorities what acts will amount to an ous-
ter. This difficulty does not seem to arise from any contra-
diction or confusion in the principles of law decided upon
this subject, but in the application of admitted principles to
the facts of each particular case. An actual ouster, or "turn-
ing out by the heels," as some of the judges have termed it,

is not necessary ; but the act or declaration, which constitutes an ouster, must be unequivocal and notorious; and as the character of the act must necessarily depend very much on the intent with which it is done, its consequences and effects in producing an adverse possession will also vary with the circumstances accompanying it calculated to explain that intent.

To constitute an adverse possession of one tenant in common against his co-tenants, there must be some notorious act asserting an entire ownership. It is further said in some cases that this act must be brought home to the knowledge of the co-tenant. This, we suppose, depends upon the nature of the act. If it consists altogether of a mere verbal assertion of entire ownership, such an assertion could not with any propriety be regarded as an act of adverse possession of which the co-tenant was bound to take notice, unless made to him or communicated to him. A declaration to a mere stranger amounts to nothing, unless that declaration is brought to the knowledge of the co-tenant. But when the act is of such a nature as the law will presume to be noticed by persons of ordinary diligence in attending to their own interests, and of such an unequivocal character as not to be easily misunderstood, it is not believed to be necessary that any positive notice should be given to the co-tenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the co-tenant. It is sufficient that the act itself is *overt, notorious ;* and if the co-tenant is ignorant of his rights or neglects them, he must bear the consequences.

In the case of Clymer's Lessee v. Dawkins, 3 How. 689, Judge Story expresses a view of the law of notice to co-tenants, which seems to have been adopted by the court below in the trial of this case. " The entry and possession of one tenant in common," says Judge Story, " of and into the land held in common is ordinarily deemed the entry and possession of all the tenants ; and this presumption will prevail in favor of all, until some notorious act of ouster or adverse

possession by the party so entering into possession is brought home to the knowledge or notice of the others." "Such a notorious ouster or adverse possession may be by any overt act *in pais* of which the other tenants have due notice, or by the assertion of a several and distinct claim to an entirety of the whole land, which, in contemplation of law, is known to the other tenants." In the case of McClung v. Ross, 5 Wheat. ——, which is referred to by Judge Story, the same court had said : "That one tenant in common may oust another and hold in severalty is not to. be questioned. But a silent possession, accompanied with no act which can amount to an ouster or give notice to his co-tenant that his possession is adverse, ought not, we think, to be construed into an adverse possession." The observations of Judge Story, in Climer's Lessee v. Dawkins, were made *arguendo*, as the facts of the case did not present any question of notice, and the judgment of the court was for the defendant in possession. The adverse possession claimed in the case was of such a character as implied notice ; and there was therefore no question of express notice in the case.

In the case of Lodge v. Patterson, the supreme court of Pennsylvania seem to explain the law relative to notice in cases of this character with more accuracy. "The character of adverse possession is given, not by proving notice to parties interested, but by the' nature of the acts done by the party. There must be a hostile intent, and that intent must be manifested by outward acts of an unequivocal kind. To constitute a disseisin, it was never held to .be requisite that notice should be sent to the disseisor, or that it must be proved that he had knowledge of the entry and ouster committed on his land. The open act of entry, with the declared intent to disseise, constitute the disseisin."

These opinions may seem to conflict, but when the facts of each case are looked to, it will seem that they are essentially different ; and the attention of the court is of course directed to the law as applicable to the state of facts presented. In the case of Lodge v. Patterson, the party sued, who was one

of several co-heirs, put up the whole land and bought it and entered, claiming the whole. The act of adverse possession was a public one, of which every one having an interest or claiming an interest in the land was bound to take notice; and it was totally irreconcilable with the admission of the co-tenancy of another.

In this case, if the declaration of the defendant to one of the witnesses, that he claimed the whole block, or was the sole owner, is the only act relied on to make the possession and retention of the rents and profits an ouster of the plaintiffs or those under whom they claim, it was proper to tell the jury that such declarations, to be available as acts of adverse possession, must be made to the co-tenant, or must be brought home to his knowledge. If other acts are relied on, their notoriety would be a matter for the jury. As the facts of the case were developed on the trial, it was apparent that they presented mainly the question whether a possession for twenty-six years, and a receipt of the rents and profits, without any account rendered, and without any demand made, would of themselves raise a legal presumption of ouster, or would authorize a court to leave the question to the jury.

In England, an exclusive possession of thirty-six years was allowed to go to the jury as evidence of an ouster, and the jury found a verdict upon this bare fact, in the absence of any explanatory proof on either side. Lord Mansfield said, when the point came up for review in the King's Bench : " It is a possession of near forty years, which is more than quadruple the time given by the statute for tenants in common to bring their action of account, if they think proper, namely, six years ; but in this case no evidence whatever appears of any account demanded, or of any payment of rents and profits, or of any claim by the lessors of the plaintiff, or of any acknowledgment of the title in them or in those under whem they would now set up a right; therefore I am clearly of opinion, as I was at the trial, that an undisturbed and quiet possession for such a length of time is a sufficient ground for the jury to presume an actual ouster, and that

they did right in so doing." (Doe v. Prosser, Cowp. 217.) This is as far as any case in England has gone.

In New York an exclusive possession of twenty-seven years was held insufficient to authorize the presumption of an ouster, although in the intermediate time there had been an actual resistance to the plaintiff's entry and claim. (Northrop v. Wright, 24 Wend. 221.)

In Pennsylvania it has been held that a jury may presume an ouster from an exclusive actual possession by a tenant in common for the period fixed by their statute of limitations. (Law v. Patterson, 1 W. & S. 186; Bolton v. Hamilton, 2 W. & S. 299; Galbreath v. Galbreath, 5 Watts, 147.) An examination of the facts, however, in the cases where this doctrine is enunciated in Pennsylvania will show that there were in each case circumstances attending the facts of possession, which would fully authorize the inference of adverse possession. The case of Law v. Patterson may be selected as the strongest case reported in support of the doctrine that mere possession and retention of profits, &c., for twenty-one years will justify an inference of disseisin. That was a case where the land was bought and paid for by the defendant in possession, and a title taken in the name of himself and another, who was a partner in mercantile business with him. The defendant had taken exclusive possession; had improved and built upon the land; had leased the whole premises for seven years; and at the expiration of that term had relet the premises for another long term, reserving rent to himself, and actually receiving all the rents and profits of the place for upwards of twenty-one years, without any demand made by the partner in whose name the purchase originally stood; and the partner lived all the while in the immediate neighborhood of the defendant, and had advanced no part of the purchase money. There could be no doubt about notice in the case, for every thing occurred, as the court observed, directly " under the eye of the plaintiff." But the court, in Wilson v. Collinshan, 1 Harr. 277, say, speaking of the case of Law v. Patterson: " The mere exclusive receipt of the

profits by one tenant in common for twenty-one years is not deemed sufficient evidence on which to found the legal presumption of ouster of his co-tenant. It only raises a natural presumption, and is evidence to go to the jury to produce conviction, *in connection with other facts.*"

The facts, which have usually gone to make out a case of adverse possession, have been such as a refusal to the co-tenant to permit his participation in the profits or his entry, a denial of his title, claiming under a defective· deed for the entirety, purchasing the co-tenant's title at a sheriff's sale and an exclusive claim under it, or a conveyance of the whole by deed and an entry by the grantee under the deed, (2 Cruise Dig. tit. W. S. 14, note 3,) and, we may add, following the case of Law v. Patterson, putting up improvements without consultation with the co-tenant and under his observation, and taking the entire profits without objection from him.

In North Carolina it appears to be held that twenty years' sole possession alone will constitute a bar. (Thomas v. Garvan, 4 Dev. 225 ; Cloud v. Webb, 4 Dev. 290.) But this doctrine would seem to lose sight of any distinction between the facts necessary to constitute an adverse possession in tenancies in common and any other case of adverse possession—a doctrine which may find some recommendation in principles of public policy, but which certainly has not yet been generally prevalent.

In Massachusetts the courts maintain the view presented by Judge Story, in Prescott v. Nevers, 4 Mason, 330, and in Clymer v. Dawkins, 3 How. 270. The entry of a tenant in common upon land, and taking the whole rents and profits without paying any share over to the co-tenant, is not regarded as an ouster ; but an entry under a claim to the whole is considered adverse ; and therefore, in the particular case referred to, a purchase of the entirety from an adverse claimant to the cotenant, although the title was invalid, was held to make the possession hostile and amount to an ouster. (Parker v. Prop., &c., 3 Metc. 99.)

Apart from any deduction to be drawn from the record

Warfield v. Lindell.

evidence offered in this case, the proof was, that the defendant went into possession of the block of ground in controversy in about the year 1830, and has continued in exclusive possession ever since ; that there was an old building on the lot at the time, formerly used as a mill, but suffered to go into disuse for that purpose, and used only as a storehouse or warehouse by the defendant or his tenants ; that he has quarried rock on different parts of the block through his workmen or tenants ; that there are on the ground some wooden buildings or sheds for the workmen who quarried there ; that the premises were leased by Lindell in 1847 to Belcher for a sum about sufficient to pay the taxes ; that the premises are now leased for the taxes. It is apparent that the premises are in the same condition now that they were in 1830. No improvements or buildings have been put upon the block. It does not appear that any profits have been derived from it. In short, so far as the class of evidence to which we now refer is concerned, there is nothing in the case except a mere possession taken twenty-six years before suit brought, and an exclusive perception of all the profits which may have been derived from that possession. The defendant has done nothing in connection with the lots which any owner of two-thirds or one-half of them might not well have done for the protection of his own interest, without any design of ousting the owner of the remaining interest.

But there are other circumstances elicited in the proof offered and rejected on the trial, which, if competent evidence, would undoubtedly have a significant bearing on the question at issue, and a controlling influence in their settlement, if not counterbalanced by proofs from the other side equally significant. The partition suit in 1836, between Ware—from whom the plaintiffs derive title—and the heirs of Bates and Smith, ought not, in our opinion, to have been excluded from the jury. The petition in that case averred that this block of ground was sold by Lisa in his lifetime. This can not be regarded as an estoppel, because, as a record, the parties are not the same ; and, as a fact *in pais*, there is

no proof that the defendant's conduct was in any way influenced by the assertion of Ware. But where a party, who has every motive, and may be supposed to possess every opportunity requisite to investigate the extent of his own title, deliberately asserts that he has none to a specific piece of ground, it is certainly a circumstance entitled to consideration, when he subsequently brings a suit for the same land, after the lapse of twenty or more years. This assertion is confirmed by the plat which is found upon the record accompanying the report of the commissioners, in which the lots sued for are marked " sold ;" and it is further strengthened by the deeds executed by Ware and Mrs. Lisa, upon a compromise of their claims to the interest of Manuel Lisa. It is true that this assertion that the lots were sold by the original owners of the tract—Lisa, Bates and Smith—in their lives, is contradicted, so far as Smith's interest is concerned, by the title produced on the part of the defendant to that interest, a title obtained by a partition among the heirs of Smith long after his death ; and it is also true that, even if the lots were unsold, they could not have formed a subject for partition between Ware and the heirs of Bates and Smith in 1836, as the two latter titles had undoubtedly at that time become vested in the defendant. But notwithstanding these circumstances, which may detract somewhat from the force of the admission, the petition of Ware is undoubtedly an assertion that to the lots numbered 5, 6, 7 and 8, now sued for, he had no title. He did not set up any title except such as was derived from the sale to Bostwick ; and that title only extended to the unsold lots. If the lots now sued for were sold in Lisa's lifetime, then Bostwick acquired no title to them by his purchase at the execution against Lisa's estate. We do not consider this assertion as conclusive as an estoppel ; for it may be explained to have been made under a mistake or in ignorance of the facts ; but it is legitimate evidence upon the question at issue, and proper for the consideration of the jury. It would certainly, if unexplained and not rebutted, form good ground for leaving a jury to presume a deed, after

the lapse of twenty-six years and a continuous possession in the defendant during this period.

On the other hand, it appears that as late as 1853, a suit was instituted by Mrs. Lisa for the same interest now sued for by the plaintiffs ; and in that suit, the defendant in his answer insisted " that he would show on the trial, and against the claim of Lisa, a title in N. Ware [from whom the present plaintiffs claim] to the premises claimed by the plaintiffs, by virtue of a sale under judgment and execution against the executors of Mr. Lisa."

In cases of long continued uninterrupted possession, juries have been authorized to presume conveyances in support of the title of the possessor. " Presumptions of this nature," it was observed by Judge Story, in Ricord v. Williams, 7 Whea. 109, " are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to or an admission of an existing title in the party in possession. They may therefore be encountered and rebutted by contrary presumptions, and can never fairly arise where all the circumstances are perfectly consistent with the nonexistence of a grant."

In addition to the fact that the possession of the defendant in this case was entirely consistent with the title to two-thirds of the block which he is conceded to have, there would seem to be great embarrassment in allowing a presumption of a fact which is virtually disavowed in the defendant's answer in a suit involving the matter now in controversy. But as the plaintiffs, or those from whom they claim title, made quite as formal a disclaimer of title on their part in the partition suit in 1836, the evidence on each side should have gone to the jury for what it was worth. If the deduction should be that both statements are true, and that neither party has a title to the interest now sued for, the result, of

course, would be to leave the defendant in possession. It is, however, the province of the jury to pass upon the facts. We will not be understood as passing any opinion upon them, and we have only alluded to them so far as to enable our views to be understood in reference to the various aspects which they seemed to present.

As the record of the suit in partition in 1836 was excluded from the consideration of the jury, the judgment will be reversed and the cause remanded for trial. The other judges concur.