## MORGAN *v.* MITCHELL *et al.*

1. There can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession.

2. Where one of two cotenants conveys the entire fee to a bona fide purchaser for value, to give the latter a prescriptive title to the premises it is necessary that he should be in actual adverse possession of the land for a period of seven years under the deed that forms the basis of his claim of title.

Argued April 29, — Decided May 25, 1898.

Complaint for land. Before Judge Smith. Dooly superior court. September term, 1897.

*E. A. Hawkins, W. V. Harvard* and *W. S. Thomson,* for plaintiff in error. *D. L. Henderson* and *U. V. Whipple,* contra.

LEWIS, J. This was a suit by the heirs at law of G. W. Trotter against Charles R. Morgan, for the recovery of an undivided half-interest in a certain tract of land in Dooly county. The land in question formerly belonged to L. H. Mebane, who, on August 25, 1854, conveyed an undivided one-half interest therein to G. W. Trotter. On April 10, 1889, the heirs at law of Mebane conveyed by deed the entire interest in the land to John F. Lewis, who in turn, on June 17, 1889, conveyed it to C. R. Morgan. The petition for the recovery of the land was filed in office on April 8, 1896. It appears from the evidence, that after the death of G. W. Trotter his heirs were in exclusive possession of the land until the beginning of the civil war. During the war it was not known who had possession. After the war the heirs of L. H. Mebane were in possession by their tenants or agents. Rents for much of the time during their possession did not amount to more than enough to pay the taxes. There was only a one-horse farm in cultivation. These rents were paid to the Mebane heirs. It was not known whether or not they divided them with the Trotter heirs. Some time in the fall of 1888, the defendant Morgan made with the agent of the Mebane heirs a contract for the purchase of the entire tract of land. These heirs, who lived in the State of Tennessee, undertook to execute a deed in pursuance of this contract, but

it was returned on account of its defective execution. Finally a deed was returned from the heirs, executed on April 10, 1889, conveying the land to John F. Lewis, who advanced the money therefor for Morgan, Lewis afterwards conveying the land to Morgan on June 17, 1889. Under this deed of April 10, 1889, the defendant in the suit asserted title. The court directed a verdict for the plaintiffs, to which the defendant excepted.

1. There is no conflict in the evidence in this case, and it is really a question of law as to which one of the parties litigant has, under the evidence, the legal title to this land. It is undisputed that the land originally belonged to Mebane and Trotter as tenants in common. The plaintiffs were the heirs of Trotter. The defendant claimed under the heirs of Mebane. It is insisted by counsel for plaintiff in error, that the heirs of Mebane, under whom he holds, were in the adverse possession of this land for more than twenty years, and that therefore they had a title by prescription. The only evidence in the record of such an adverse holding is the bare fact that they were in the exclusive possession by their tenants or agents, and that what rents were collected from the land were paid to them, their agent testifying that he knew of no other owner or claimant of the premises. We do not think this is sufficient to make out a case of adverse holding by one cotenant against another. Section 3145 of the Civil Code declares: "There can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession." There is no evidence whatever of any actual ouster of the Trotter heirs by the Mebane heirs, at least until possession by the purchaser under a deed from the Mebane heirs, conveying the entire interest to another, executed April 10, 1889. Nor is there any evidence of any exclusive possession by them after demand, or any express notice given by them of adverse possession. The doctrine of an adverse holding by one of two cotenants against the other is succinctly laid down in the 11 Am. & Eng. Enc. L. 1112. We quote the following from that text, which is sustained by numerous authorities cited in the notes thereto: "The entry and possession of one joint tenant or tenant in common being, prima facie, in support of his

cotenant's title, to constitute an adverse possession there must be some notorious and unequivocal act indicating an intention to hold adversely, or an actual disseisin or ouster. The silent and peaceable possession of one tenant, with *no* act which can amount to an ouster of his cotenants, is not adverse; so either actual notice of the adverse claim must be brought home to the latter, or there must have been unequivocal acts, open and public, making the possession so visible, hostile, exclusive, and notorious that notice may fairly be presumed, and the statute of limitations will begin to run only from the time of such notice." *Harral* v. *Wright*, 57 *Ga.* 484; *McDowell* v. *Sutlive*, 78 *Ga.* 142–8. Exclusive possession, therefore, by a cotenant alone will be presumed not an adverse holding, but simply one in support of the common title. So the payment of rent to one tenant will be presumed to be collected by the tenant for the common benefit of all the owners. In the case of Rodney *v.* McLaughlin (Mo.), 9 S. W. 726, rents were paid by the collector to one tenant in common, the collector stating that he never knew any other owner of the property and that he never paid any rents to the other cotenant; and it was held that such a collection of the rents by the tenant was not evidence that the latter held adversely to his cotenant.

2. It is further insisted in behalf of the plaintiff in error, that he was in possession of this land under color of title for more than seven years prior to the bringing of this action. We think that a conveyance of the entire interest in the land by one of two cotenants and a possession by the purchaser under a deed from the tenant conveying the premises would be evidence of ouster, and would fix the date from which a prescriptive title would begin to run or accrue. But the color of title under which the plaintiff in error asserts his claim to the land was executed on the 10th day of April, 1889, and this suit was brought on the 8th day of April, 1896, two days before the expiration of the seven years. Plaintiff in error, therefore, had no prescriptive title under this deed. He insists, however, that his prescriptive rights began at the time of the defective execution of the first deed. As to what the defect was in the first deed does not appear in the record; and we therefore can

not say whether or not the deed would have even amounted to color of title. But it is a complete answer to the contention of plaintiff in error, that he never held the land under this deed. On the contrary he rejected the deed, and the title under which he asserts his claim to the land is by a deed subsequently executed by his vendors. Before he got this last deed, then, he was in possession of the premises, not under any color of title, but solely by virtue of a parol contract of purchase. The law nowhere declares that such a possession can be the basis of a seven years prescriptive title. Prescription runs only from date of the written color. *Hobby* v. *Alford*, 73 *Ga.* 791 (3). We conclude, therefore, that the evidence in this case demanded a verdict for the plaintiffs, and the judgment of the court below in directing the jury to so find should be

*Affirmed. All the Justices concurring.*