## ROUMILLOT *et al.* *v.* GARDNER.

Entering into possession of a portion of a cemetery lot, which is inclosed by a fence, by one claiming to be the owner of such portion, and erecting a substantial iron fence so as to divide the part so claimed from the remaining part of the lot, is, as to that peculiar character of property, an act showing adverse possession of a public nature, totally irreconcilable with cotenancy, and amounts to an actual ouster of others claiming to be tenants in common with the possessor.

Argued January 31,—Decided March 26, 1901.

Application for partition. Before Judge Brinson. Richmond superior court. May 9, 1900.

*Simeon Hyde* and *F. W. Capers*, for plaintiffs.
*William H. Barrett*, for defendant.

COBB, J.　On December 9, 1899, Ella V. Roumillot and Emma S. Chapman brought their petition against A. S. J. Gardner for the partition of a cemetery lot located in the city of Augusta.　The case was submitted upon an agreed statement of facts, the substance of which was as follows:　The lot in controversy was owned by John E. Marley, who died intestate, leaving as his only heirs at law the plaintiffs and George W. Marley, all of whom were residents of Charleston, S. C.　George W. Marley entered into a correspondence with J. M. Hays, looking to a sale of a portion of the lot to him, and assuring Hays that he was "the only heir to the place." After some correspondence Hays bought a portion of the lot, and went into possession under and by virtue of an instrument of which the following is a copy:　"Charleston, S. C. July 16, 1892.　This is to certify that I have sold to John M. Hays twenty-three (23) feet of my section, fronting on Fourth Avenue, known as 'Marley section,' for the sum of one hundred and forty dollars, $140.00.　He is to do with said twenty-three feet as he may see fit, and he (John M. Hays) to brick in two (2) graves of the remaining part of said Marley section, and to let fence around section stay, or to have said remaining part fenced off by same fence should a change be made. [Signed] Geo. W. Marley."　John M. Hays bricked in two graves in the remaining part of the Marley section, the graves of John E. Marley and his wife.　The fence around the entire section has been left as it was.　In the year 1892, prior to October 14, Hays sold and conveyed the portion of the section bought by him to A. S. J. Gardner, whose child had been previously buried thereon.　A record of this transfer to Gardner was made on the cemetery records.　On November 10, 1892, Gardner had erected an iron fence between the portion of the section purchased by him and the remaining portion, and at the same time had placed at the gate of the section a stone step with "Gardner" engraved thereon.　George W. Marley was buried April 27, 1899, in the one-third of the section that had been fenced off from the two-thirds bought by Gardner.　No other person has ever been buried on that portion of the lot purchased by Gardner, except his child, and he has maintained it as his section ever since his purchase.　The plaintiffs are both of age and free from any disability, and have been for more than eight years.

During the period since Gardner bought there has been no suit or claim of any kind filed against this property until this petition for partition was served on December 9, 1899. The court directed a verdict for the defendant, and the plaintiffs excepted.

It is conceded that the certificate under which Hays went into possession operated as color of title; and adverse possession of land under color of title for seven years will give a good title by prescription. Civil Code, § 3589. But "there can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession." Civil Code, § 3145. As there is no evidence in the record of any demand for possession having been made on the defendant or his predecessor in title, or any "express notice" of adverse possession from either (*Harral* v. *Wright*, 57 *Ga.* 484), the question to be decided is whether the facts above detailed are sufficient to show "an actual ouster" of the plaintiffs. The right to an easement may be acquired by prescription. Civil Code, § 3590. And if the defendant simply acquired by his purchase the right of burial and not the fee in·the soil (*Jacobus* v. *Children of Israel*, 107 *Ga.* 521), this would make no difference in the character of proof necessary to show actual ouster of the plaintiffs. This might not be true as to some easements, but it would be as to such an easement in a cemetery lot, which for practical purposes is equivalent to an ownership of the soil. The question whether ouster results from occupation and possession in a given case is a question of fact for the jury. Bolton *v.* Hamilton (Pa.), 37 Am. D. 509. In determining this question each case must necessarily be left to rest on its own facts, but regard is to be had to certain well-settled rules laid down for guidance when dealing with such matters. The presumption is that the possession is not adverse, but in common with the other owners. Warfield *v.* Lindell, 30 Mo. 272, s. c. 77 Am. D. 614; Dubois *v.* Campan, 28 Mich. 316. "To constitute disseisin of a tenant in common by his cotenants, there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the cotenants that an adverse possession and an actual disseisin are intended to be asserted against them." Ball *v.* Palmer, 81 Ill. 372. The adverse possession of the tenant must be a public one, totally irreconcilable with

the cotenancy of another.    Long *v.* McDow, 87 Mo. 203. · "To constitute ouster of one cotenant by another in possession, some notorious and unequivocal act indicating an intention to hold adversely is necessary." Colburn *v.* Mason, 25 Me. 434, s. c. 43 Am. D. 292. " The adverse character of the possession must in every case be manifested to the owner.    The owner must be notified in some way that the possession is hostile to his claim, or the statute does not operate on his right." Unger *v.* Mooney, 49 Am. R. 103. See also 1 Freeman, Cot. § 241 et seq., where it was said, quoting from Tulloch *v.* Warrall, 49 Pa. St. 140, that, "In the cases in which one tenant in common has successfully asserted the statute against his cotenants, there have been unequivocal acts, such as resistance of the right of entry, confession of disseisin, selling, leasing, or improving the premises, or a part of them." See also Abbott's Trial Ev. (2d ed.) 904.    While entering into possession by a cotenant under a recorded deed and remaining in possession and exercising acts of ownership would be a strong circumstance to show actual ouster of the other cotenants, this would not, according to many of the authorities, be conclusive, though this court seems to have taken the other view in *Freeman* v. *Cherry,* 49 *Ga.* 9, 14, where it was said that "possession under a title and claim to the whole lot is hostile to, and adverse to, the title and claim of those who claim a part thereof as tenants in common." See also *Norris* v. *Dunn,* 70 *Ga.* 796; *McDowell* v. *Sutlive,* 78 *Ga.* 143.

In the present case there was no recorded deed; and the defendant can take nothing from the fact that the entry of the transfer of title to him was made in the cemetery records, as the plaintiffs were not shown to have had any notice of this entry.    The plaintiffs can take nothing from the fact that they had been absent for several years in another State and had no opportunity of observing the acts of the defendant, for the reason that the law presumes conclusively, when actual ouster has been shown, that the plaintiffs had notice of the defendant's claim.    Thus narrowed, the facts relied on by the defendant to show actual ouster of the plaintiffs are the burial of his child, fencing off the part to which he claims title, and the placing of a stone at the gate of the section, with his family name engraved thereon.    The burial of his child in the portion of the lot claimed by him would not amount to an actual ouster, for the reason that such an act is not at all inconsistent with cotenancy in a

cemetery lot. The placing of the stone at the gate of the section with the name of the defendant thereon would not amount to an actual ouster, for it appears that this stone was placed at the gate to the section and was not placed in any such peculiar position as to indicate a claim of ownership to any designated portion of the section. The case is, therefore, in narrow limits. The question is whether, when one, the tenant in common with two others in a cemetery lot, makes claim to a certain designated part of the lot, and asserts this claim by erecting a substantial iron fence on the dividing line between the portion claimed and the remainder of the lot, he does such an act as would amount to an actual ouster of his cotenants. Ordinarily, the erection of a division fence separating two parts of a lot will not amount to an actual ouster. . Especially is this true as to farm and residence lots. But, on account of the peculiar character of a cemetery lot, we are of opinion that the erection of a substantial division fence can not be other than an actual ouster of those claiming an interest in the part so fenced off. The erection and maintenance of such a fence in a cemetery lot can not make any other impression upon the passer-by than that the lot is owned by two persons or sets of persons, and the fence marks the dividing line. This is what we understand the law to mean when it says that the acts relied upon to constitute an actual ouster must be such as to indicate unequivocally an intention to hold adversely against all other claimants.

*Judgment affirmed. All the Justices concurring.*