S98A1460. WRIGHT et al. v. WRIGHT et al.

(512 SE2d 618)

THOMPSON, Justice.

This is an appeal from a judgment entered on a jury verdict awarding title to a 429.5-acre farm to appellee Estate of H. L. Wright, Jr., on the theory of adverse possession against cotenants.

The property in issue was acquired by warranty deed in 1940 by H. L. Wright, Sr. ("Harve") and his eldest son H. L. Wright, Jr. ("Aitchey"), now both deceased. Father and son each paid $100 toward the $2,000 purchase price, and the balance of $1,800 was financed with a 20-year note. Harve Wright never paid any installments on the loan nor taxes on the property. He died two years later. He was survived by his wife, Leila, three adult sons (including Aitchey), and three minor children. In 1943, the Probate Court of Jackson County awarded as a year's support to Leila and her minor children, Harve's undivided one-half interest in the property, which the court valued at $125.

Leila and her minor children moved onto the farm and lived there with Aitchey and his family until 1944, when Leila relocated to Jefferson, Georgia to take work at a cotton mill. At no time thereafter did Leila claim an ownership interest in the farm, nor seek a share of the farming profits. Beginning in 1941, the farm was returned for taxes exclusively in Aitchey's name and he received the benefit of the homestead exemption; his wife Lorene personally paid the tax bills beginning in 1944, and has done so since. In 1944, Aitchey and Lorene together had succeeded in paying off the entire mortgage. With the exception of one year, Lorene has occupied the property continuously until the present time. By 1950, the youngest of Aitchey's siblings had attained the age of majority; and Leila and all of her children had permanently left the farm.

By deed recorded in 1962, Aitchey conveyed fee simple title to 8.623 acres of the farm to Jackson County, warranting that he had the right to sell and convey the land. At the same time, he conveyed a right-of-way easement for construction of a roadway. Again in 1964 and 1974, Aitchey granted four flowage easements for dam and reservoir construction. He never sought permission from his siblings before making any of these conveyances.

The evidence showed that Aitchey was overbearing and tyrannical and that there was ill will between himself and his siblings over ownership of the farm. One sibling testified that he knew from the time the property was purchased that Harve and his heirs had a half-interest in the farm, but he never discussed the issue of ownership with Aitchey. Others opined that Aitchey probably would have "killed them" or "run them off" if they had asserted a claim of ownership.

Lorene testified that the siblings always referred to the property as "Aitchey's farm"; they knew Aitchey claimed sole ownership and they never asserted a contrary claim; and she and her late husband were certain that the farm belonged solely to Aitchey. The evidence showed that Aitchey worked the land day and night, made substantial improvements to the property, and together with his wife paid *all* loan installments and taxes.

Although Aitchey assured his wife over the years that he had removed his father's name from the deed, in actuality he failed to do so because he believed it would cost him more than the $100 his father had originally contributed to the purchase of the farm. In the early 1970's Aitchey's siblings heard rumors that "somebody was messing with the [property] deeds," and as a result conducted their own title investigation, whereupon they confirmed that Harve and Aitchey jointly owned the property. But they were afraid to confront Aitchey with the information because of his tyrannical nature, believing that eventually (upon Aitchey's death) "everything would be settled."

Sometime after Aitchey's death, his widow Lorene and their children requested that Harve's heirs execute quitclaim deeds conveying the property to Aitchey's estate. When they refused, Lorene and Aitchey's children, as representatives of his estate, filed the present action to quiet title on theories that the estate had acquired equitable title to the property either by adverse possession, purchase money resulting trust, or constructive trust. The named defendants are the heirs of H. J. Wright, Sr.

At the close of plaintiffs' evidence, defendants moved for directed verdict on all counts. The trial court granted defendants' motion on the theory of constructive trust, but denied motions for directed verdict as to plaintiffs' claims of adverse possession and purchase money resulting trust. The jury returned a verdict awarding the entire property to the plaintiffs on the theory of adverse possession.[1] On appeal, defendants challenge the denial of their motion for directed verdict as to plaintiffs' claim of prescriptive title by adverse possession, and

---

[1] The court instructed the jury that if they were to award title to plaintiffs based on adverse possession, they would not be required to consider plaintiffs' claim for a purchase money resulting trust; and the verdict form so reflected.

submit that the verdict was not supported by the evidence.

A directed verdict may be granted only where the evidence and all reasonable deductions therefrom demand a verdict in the movant's favor. OCGA § 9-11-50 (a); *Ga. Power Co. v. Irvin,* 267 Ga. 760 (1) (482 SE2d 362) (1997). The same standard applies in reviewing the sufficiency of the evidence on general grounds. Id.

There is no dispute that the parties jointly acquired the property as tenants in common. First, the 1940 warranty deed created a tenancy in common between father and son. OCGA § 44-6-120. And the 1943 award of a year's support to Leila Wright and her four minor children vested them with a one-half undivided interest as tenants in common with Aitchey. When property is set apart for a widow and her minor children as an award of a year's support, they receive the title that the deceased held. *Stephens v. Carter,* 215 Ga. 355 (2) (110 SE2d 762) (1959).

A party who asserts a claim of title by adverse possession against a cotenant has the burden of proving not only the usual elements of prescription, see OCGA § 44-5-161,[2] but also at least one of the elements of OCGA § 44-6-123, which provides as follows: "There may be no adverse possession against a cotenant until the adverse possessor effects an actual ouster, retains exclusive possession after demand, or gives his cotenant express notice of adverse possession." See also *Harris v. Mandeville,* 195 Ga. 251 (4) (24 SE2d 23) (1943).

Although a presumption exists that a cotenant in exclusive possession is not holding adversely to his cotenants, but for the common benefit of the others, this presumption may be rebutted where the contrary appears. *Hardin v. Council,* 200 Ga. 822 (1) (38 SE2d 549) (1946). And while exclusive possession, payment of taxes, and the making of improvements alone do not necessarily establish an ouster, id., a conclusion of prescriptive title may be drawn where " 'there have been unequivocal acts, such as . . . selling, [or] leasing . . . the premises, or a part of them.' " *Roumillot v. Gardner,* 113 Ga. 60, 63 (38 SE 362) (1901). In addition, a cotenant in possession may satisfy the "express notice" criterion by showing either: (1) that actual notice of the adverse party was "brought home" to the nonpossessory cotenant; or (2) that there are "unequivocal acts, open and public, making the possession so visible, hostile, exclusive, and notorious that notice may fairly be presumed." *Hardin,* supra at 831. See

---

[2] OCGA § 44-5-161 provides: "(a) In order for possession to be the foundation of prescriptive title, it: (1) Must be in the right of the possessor and not of another; (2) Must not have originated in fraud except as provided in Code Section 44-5-162; (3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and (4) Must be accompanied by a claim of right. (b) Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party."

also *Roumillot*, supra; *Morgan v. Mitchell*, 104 Ga. 596, 598 (1) (30 SE 792) (1898).

We conclude that the court properly denied the motion for directed verdict, and the evidence of record was sufficient to allow the jury to find that plaintiffs met their burden of establishing title by prescription against defendant cotenants. First, there was evidence that plaintiffs lawfully acquired the property in 1940, and exclusively and continuously occupied the farm since 1950, making valuable permanent improvements. Major dams and lakes were constructed after the flowage easements were granted. Express notice of adverse possession from one cotenant was "brought home" to the others in 1962, when by recorded deed, Aitchey purported to convey a "fee simple" interest in a portion of the land to a stranger, see e.g., *Broadwater v. Parker*, 209 Ga. 801 (76 SE2d 402) (1953), and by actual and notorious possession by the purchaser. *Davis v. Harnesberger*, 211 Ga. 625, 628 (87 SE2d 841) (1955); see also *Lindsey v. Lindsey*, 249 Ga. 832, 833-834 (294 SE2d 512) (1982); *Morgan*, supra at 598. A conveyance by one cotenant of a fee simple interest to a stranger in the commonly-held property is one of those exceptional state of facts as may constitute an ouster. *Roumillot*, supra. Compare *Hardin*, supra at 833 (there is a material difference between the effect of a cotenant's transfer purporting to convey the whole estate *to* a stranger, and the effect of a cotenant's receipt of such an interest *from* a stranger). Moreover, plaintiffs offered direct evidence that the cotenant siblings knew of the hostile character of Aitchey's possession, but feared to confront him with their claim of one-half ownership. These statements are sufficient evidence for the jury to conclude that Aitchey's claim of ownership was brought home to his nonpossessory cotenants, or in the least, that notice to them may be fairly presumed.

The evidence of record did not demand a verdict for the defendants, but was sufficient to create issues of fact for determination by the jury. The jury resolved those issues in favor of the plaintiffs, and the evidence amply supports the verdict rendered.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 22, 1999.

*Harvey, McCormack & Free, Walter B. Harvey, Paula O. Free,* for appellants.

*George E. Butler II,* for appellees.