S11A1977. DeFOOR et al. v. DeFOOR.

(722 SE2d 697)

THOMPSON, Justice.

Flint Timber Company, a developer, approached Larry DeFoor to purchase an easement on 6.5 acres of land in Ellijay, Georgia. At the time, the record title holder was Larry's grandmother, Millie DeFoor. Millie, who had nine children, had lived on the property with her son, Clarence DeFoor, until her death in 1963.

Clarence and his wife, Lorena, continued to live on the property after Millie's death. Clarence paid the property taxes, repaired and

improved the home, maintained a garden, kept junk automobiles, removed large trees, kept roosters (in approximately 250 fenced pens) and rented "the little house" on the property to different people.[1]

Clarence and Lorena raised their two children, Larry and his brother Gary, on the property. Clarence entered a nursing home in the mid-1990's and died in 1998. Many of Millie's other descendants lived, or attended church, nearby, and they would visit with Clarence and Lorena from time to time.

Larry continued to live on the property after his father died. He maintained the property and cared for Lorena, who died in 2010. He raised cattle, built fences to enclose pastures, cleared approximately seven acres of land, dug a well, removed and sold timber (earning between $3,000 and $5,000), built and operated an auto shop, kept the home repaired, built a second house (in 1991), and paid the real estate taxes on the property. Although Larry managed and lived on a nearby chicken farm from 2000 to 2008, he continued to maintain and repair the property and take care of his mother.

After he was approached by the developer, Larry filed a petition to establish title against all the world. Appellants, certain descendants of Millie DeFoor, answered the petition and denied its material allegations.[2] Following a jury trial, the court entered judgment in favor of Larry, finding that he established title by adverse possession. This appeal followed.

1. In their first enumeration of error, appellants assert the trial court erred in failing to grant their motion for summary judgment on the ground that Larry lived on the nearby chicken farm for eight years. However, because we find the evidence sufficient to support the jury's verdict in favor of Larry, the earlier denial of appellants' motion for summary judgment is harmless or moot. *Dunlap v. Dunlap*, 234 Ga. 304, 306 (3) (215 SE2d 674) (1975); see *Weir v. Kirby Constr. Co.*, 213 Ga. App. 832, 835 (4) (446 SE2d 186) (1994).

2. Appellants assert the evidence was insufficient to support the verdict because, although Larry maintained the property, he did not always live on it. This assertion is without merit. Larry did not need to reside on the property in order to establish adverse possession; he only needed to exercise dominion over it. See *Childs v. Sammons*, 272 Ga. 737, 739 (2) (534 SE2d 409) (2000) (indicia of dominion included cultivating garden, harvesting trees, maintaining roads, hunting and excluding others from use of property); *Chancey v. Ga.*

---

[1] Larry moved into the "little house" himself in approximately 1987. It ultimately fell into disrepair, and Larry demolished it in 2002.

[2] Several other descendants acknowledged Larry's claim and executed quitclaim deeds in his favor.

*Power Co.*, 238 Ga. 397 (233 SE2d 365) (1977) (claim of right will be presumed from assertion of dominion). The evidence supports the jury's determination that Larry exercised dominion over the property even when he lived on the nearby chicken farm.

3. Appellants' assertion that Larry cannot "tack" his adverse possession to the adverse possession of his father is without merit. *Blalock v. Redwine*, 191 Ga. 169 (12 SE2d 639) (1940).

4. Appellants point out that, inasmuch as Clarence and other descendants of Millie were cotenants, it was incumbent upon Larry to show that he and Clarence made possession exclusive through ouster or notice. OCGA § 44-6-123. Whether Larry met that requirement was a question for the jury to resolve. *Watkins v. Hartwell R. Co.*, 278 Ga. 42, 44-45 (597 SE2d 377) (2004).

> Although a presumption exists that a cotenant in exclusive possession is not holding adversely to his cotenants, but for the common benefit of the others, this presumption may be rebutted where the contrary appears. *Hardin v. Council*, 200 Ga. 822 (1) (38 SE2d 549) (1946). And while exclusive possession, payment of taxes, and the making of improvements alone do not necessarily establish an ouster, id., a conclusion of prescriptive title may be drawn where " 'there have been unequivocal acts, such as . . . selling, [or] leasing . . . the premises, or a part of them.' " *Roumillot v. Gardner*, 113 Ga. 60, 63 (38 SE 362) (1901). In addition, a cotenant in possession may satisfy the "express notice" criterion by showing either: (1) that actual notice of the adverse party was "brought home" to the nonpossessory cotenant; or (2) that there are "unequivocal acts, open and public, making the possession so visible, hostile, exclusive, and notorious that notice may fairly be presumed." *Hardin*, supra at 831. See also *Roumillot*, supra; *Morgan v. Mitchell*, 104 Ga. 596, 598 (1) (30 SE 792) (1898).

*Wright v. Wright*, 270 Ga. 530, 532 (512 SE2d 618) (1999).

We find the evidence sufficient to enable the jury to conclude that Larry met his burden to show ouster. Larry and Clarence did more than simply make improvements and pay property taxes. They took unequivocal steps, including renting a part of the premises to different people and cutting and selling timber, see *Roumillot*, supra, which were "inconsistent with, and exclusive of, the rights of the cotenant[s] not in possession." *Williams v. Screven Wood Co.*, 279 Ga. 609, 610 (619 SE2d 641) (2005). Moreover, these acts were "open and public, which made the possessors' occupation so visible, hostile, and notorious as to presume notice to the non-possessor[s]. *Wright*,

supra at 533." Id. at 610-611.

5. It was not error to grant Larry's first motion in limine which sought to exclude evidence that a father of one of the appellants, Wilburn DeFoor, told Wilburn that in 1982 he told Gary DeFoor, Larry's brother, he (Gary) could not build a house on the property. The evidence was double hearsay and inadmissible. OCGA § 24-3-1.

6. The trial court did not err in refusing to permit appellants to show that Flint Timber agreed to pay Larry for an easement on the property, as well as $50,000 for his attorney fees. The trial court correctly limited the evidence to the issue of adverse possession. Flint Timber's offer to pay Larry was irrelevant to the issues decided by the jury. OCGA § 24-2-1.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 23, 2012 —
RECONSIDERATION DENIED FEBRUARY 27, 2012.

Wilburn DeFoor, *pro se.*
Hilda DeFoor Goins, *pro se.*
*Clifford S. Lancey*, for appellee.