COWART, administrator, *v.* STRICKLAND *et al.,* executors.

No. 7424. MAY 16, 1930.

532

*C. L. Cowart,* for plaintiff in error.

*Eason & Everitt* and *P. M. Anderson,* contra.

HINES, J. ■ The deed from John Cobb, as administrator of Horatio Cobb, to Sarah Cobb, conveying "a tract or parcel of land, lying and being in the County of Tattnall, on the waters of Cedar Creek, joining lands of Collins and others, containing one hundred and eighteen acres," was not void for lack of sufficient description. The deed describes the land thereby conveyed as a tract of land in Tattnall County. It lies on the waters of Cedar Creek. It adjoins the lands of Collins and others, and contains 118 acres, no more or no less. Such description was sufficient, and parol evidence was admissible to identify the land thereby conveyed, as the premises in dispute. *Andrews* v. *Murphy,* 12 *Ga.* 431; *Jennings* v. *National Bank of Athens,* 74 *Ga.* 782; *Mohr* v. *Dillon,* 80 *Ga.*

573 (5 S. E. 770); *Derrick* v. *Sams,* 98 *Ga.* 397 (25 S. E. 509, 58 Am. St. R. 309); *Price* v. *Gross,* 148 *Ga.* 137, 142 (96 S. E. 4). Such deed and the transfer thereon were admissible to show title in the grantee to the land thereby conveyed, and were further admissible to show title by prescription.

■ The court charged the jury as follows: "And the claimant says the property belongs to the estate of William Cowart, because way back yonder, before the act of 1866, he married Zelphia Collins, or Zelphia Cobb, daughter of Sallie Cobb, and before the act of 1866 whenever a man married a woman and nothing was done by the parents of the wife to keep the title in her, and it doesn't appear in this case that was done, when he married his wife before the act of 1866 all the title that she had to real estate vested at once in the husband, out of the wife and in the husband." To this charge claimant excepted upon the grounds (a) that he made no such contention, and (b) that it was inapplicable for the reason that there was nothing in the pleadings and the evidence on which to base the same, and it was calculated to confuse and mislead the jury: If the claimant did not make the contention attributed to him in this instruction of the court, such misstatement of his contention does not require the grant of a new trial. The principle of law announced by this instruction was applicable to the case under the evidence introduced by the plaintiffs; and it did not exclude from the consideration of the jury other contentions of the claimant.

■ The court charged the jury as follows: "Now, if he got any title from any source at all, he got it by purchase or contract. Now, if he got any title from Sallie Cobb during his lifetime, then that title would go to his heirs at his death. Now let's see if he got any title. They talked about a deed being before the court here, but there is no deed before you all, and I charge you not to consider anything in reference to any deed made by Sallie Cobb to William Cowart; don't consider anything about that deed, because it's not before you." Movant excepted to this instruction, for the reason that it excluded from the jury much oral testimony touching the existence of a deed to the premises in dispute to claimant's intestate, such testimony being admitted without objection. This instruction was not erroneous. The court, having ruled out the deed under which the claimant claims title to the premises in dis-

pute, properly instructed the jury that they were not to consider such deed, because it was not before them.

The court instructed the jury as follows: "Then there is evidence here to the effect that there was a contract made between Sallie Cobb and William Cowart and Zelphia Cowart that they were to take care of Sallie Cobb during her life and at her death the property would descend to them or they would acquire the property. Well, that contract is not before you. It does not appear it was a deed of conveyance or contract of conveyance, but simply a contract to the extent that if you, William Cowart and Zelphia Cowart, will take care of Sallie Cobb, at my death the property belongs to you. It appears from the evidence and admissions made before the court and you gentlemen of the jury that within a year, no, I don't know how long a time, won't say, anyhow before the contract was completed Cowart died before Sallie Cobb died and he didn't complete the contract in carrying out his obligations with his wife in taking care of Sallie Cobb. Now if that contract was before the court he could give you some instruction on it; but we are all at sea, because we don't know any of us what it is, except from the testimony delivered here, and all we know about that they were to take care of her, and if they did that the title would then vest in them. Well, it further appears from the testimony in this case that after the death of William Cowart, Sallie Cobb and Zelphia Cowart (who is Zelphia Collins now) made another agreement for the purpose of carrying out the terms of the original agreement, in which Zelphia Cowart agreed to carry out the terms of the agreement, and in which the mother agreed to convey to her or let her have the title at her death. Whether that was carried out it does not appear yet to the satisfaction of the court or the jury. I don't know, I suppose it was, but I don't know." To this instruction claimant excepted upon the grounds (a) that it was an expression of opinion by the court as to what had been proved; (b) that it did not clearly state the contention of either party with reference to said contract; and (c) that that portion of the charge as follows: "Well, it further appears from the testimony in this case that after the death of William Cowart, Sallie Cobb and Zelphia Cowart (who is Zelphia Collins now) made another agreement for the purpose of carrying out the terms of the original agreement, in which Zelphia Cowart agreed to carry out the terms of the agreement, and in

which the mother agreed to convey to her or let her have the title at her death. Whether that was carried out it does not appear yet to the satisfaction of the court or the jury. I don't know, I suppose it was, but I don't know," was erroneous for the reason that it assumed as true, and instructed the jury accordingly, that there was a second contract made, which was not admitted or recognized by the claimant, and by said charge the court invaded the province of the jury as to whether said contract existed at all. These exceptions were well taken. In giving this charge the court invaded the province of the jury.

■ The court instructed the jury as follows: "I charge you further in this connection, in reference to the homestead record that was introduced: Homestead property in this State is only an estate for life of the widow and the minor children during their minority; and I charge you further in this connection that a person can't get title to property by homesteading it, unless he had title to start with; and if you find in this case that William Cowart had not title to this property, he didn't acquire any title by reason of getting a homestead over something that he didn't own, and therefore, if you find he didn't own it, the homestead record will have no weight with you. In order for the homestead to have any weight before you, gentlemen of the jury, you would have to find title in William Cowart before you could consider the homestead record in this case." To this charge movant excepted upon the grounds (a) that it was an incorrect statement of the law; and (b) because the court instructed the jury that they would have to find title in William Cowart before they could consider the homestead record in this case, the same having been introduced to show that he claimed the land in 1872 when the homestead was taken out, and was a circumstance which could be considered in connection with his possession of the land from 1858 until his death, in determining whether he had title thereto or not. These objections to this instruction are well founded, and the court erred in giving this instruction to the jury. The jury could consider the homestead upon the question of title in William Cowart vel non.

■ The court charged the jury as follows: "Now I charge you, if you find from the evidence in this case that Zelphia Cowart, originally Zelphia Cobb, made a contract with her mother, accompanied by her husband, the two trading with the mother and

mother-in-law, that gave them the right of possession, and if they went in possession under that contract, then there was no fraud in acquiring possession, because they got there rightfully. Then I charge you further in this case, if you find from the evidence, and I think it is admitted all round, that Cowart died first, then if Zelphia Cowart, if you find that she was an heir of Sallie Cobb, and Sallie Cobb died, the heir inherited instanter whatever property the mother had, not only the right but the right of possession; and if you find that to be true, then I charge you there is no fraud in acquiring possession, none whatever." To this instruction the claimant excepted upon the grounds (a) that it was an incorrect statement of the law, the court having given this instruction while charging the jury on the law of prescription; and (b) because, after charging the jury that if William Cowart and his wife went into possession under a valid contract of purchase, it was error to then charge them, in effect, that if Cowart died his interest in the property would cease, and all rights under the contract would terminate and the property would revert to the original owner, and be inherited by Zelphia Cowart at the death of her mother. The court erred in giving this instruction, for the reasons assigned. It was given in connection with the court's charge upon the claim of prescriptive title in Zelphia Cowart set up by her executors; and it was error to instruct the jury that if Cowart died first, his widow inherited whatever property her mother had, both the title and the right to possession, and that there would be no fraud in the wife's possession as against her deceased husband. Besides, the second exception to this instruction was well taken.

■ The court charged the jury as follows: "So if you find in this case that Zelphia Collins entered into possession of this property bona fide and in good faith and remained in possession twenty years, adverse possession, she would have title by prescription." Claimant excepted to this instruction upon the grounds (a) that it was an incorrect statement of the law, for the reason that the court failed to instruct the jury, in connection with said charge, that possession to be the foundation of prescription must be in right of the possessor, must not have originated in fraud, and must be exclusive; and (b) because the judge failed to charge the jury in connection therewith the contention of the claimant that upon the death of William Cowart the tract of land in dispute was turned

over to Zelphia Cowart for her life, to have use of it, and at her death was to be divided between the heirs of William Cowart. The exceptions to this instruction do not come within the rule that an exception to a correct charge is not good because another correct principle is not given in charge to the jury; but, properly construed, the exception is that the charge given is erroneous because it is incomplete. So construed, the charge is erroneous, because it omitted the element of permissive possession. Permissive possession can never ripen into a prescriptive title. *Doris* v. *Story,* 122 *Ga.* 611 (4) (50 S. E. 348). Where possession is inceptively permissive, title by prescription under twenty years possession would not ripen until the expiration of twenty years after actual notice of the adverse claim of the one setting up prescription. *Rucker* v. *Rucker,* 136 *Ga.* 830 (2) (72 S. E. 241). Furthermore, when a wife remains for the statutory period after the death of her husband upon lands which had belonged to him, and upon which she reared their family of minor children, who were coheirs with her of her husband, such possession of the wife would not be adverse to her coheirs by reason of the fact that she entered into or remained in possession of the property in good faith, and remained in possession for twenty years. *McQueen* v. *Fletcher,* 77 *Ga.* 444 (c).

■ The court charged the jury as follows: "If you find in this case that the Cowart heirs, the claimant in this case, had notice that Aunt Zelphia Collins had asserted an adverse claim to that property, and they did not assert title or do anything, then I charge you that after the expiration of twenty years she would have acquired title by prescription." To this instruction claimant excepted upon the ground that it omitted the element that there can be no adverse possession against a cotenant until an actual ouster, or exclusive possession after demand, or express notice of adverse possession. The instruction as given was incorrect, because of the omission of these essential elements, which are necessary to constitute adverse possession by one cotenant against another. Civil Code (1910), § 3725.

*Judgment reversed. All the Justices concur.*