1. Where a married woman died intestate, leaving her husband and their seven children as her only heirs at law, the husband and the children each inherited one-eighth undivided interest in the realty owned by the intestate at the time of her death, and they became tenants in common as to such realty. Code § 113-902.
2. While actual adverse possession of land for twenty years will ripen into a good title by prescription, permissive possession can not be the foundation of a prescription until an adverse claim and actual notice to the other party. Code, §§ 85-406, 85-402; Rucker v. Rucker, 136 Ga. 830 (2) (72 S.E. 241).
3. Nor can there be "adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession; in any of which events the cotenant may sue at law for his possession." Code, § 85-1005. *Page 252 
4. A party who alleges title by prescription has the burden of proving it; and where it is contended that a former tenant in common acquired prescriptive title as against his former cotenants, the party asserting such contention has the burden of proving not only the usual elements of prescription, but also at least one of the conditions stated in the foregoing section as to cotenants. Morris v. Davis, 75 Ga. 169; Morgan v. Mitchell, 104 Ga. 596 (30 S.E. 792); Strickland v. Strickland, 147 Ga. 494 (5 a), 498 (94 S.E. 766); Cowart v. Strickland, 170 Ga. 530 (4-7), (153 S.E. 415).
5. In the instant case the judge charged the jury "as a matter of law" that on the death of the intestate her husband and children, including the plaintiffs, became joint tenants of the property owned by her, and before title by prescription to any part of it could be acquired by the surviving husband, "there would have to be an adverse possession toward such tenants as he was prescribing against, after they had notice brought home to them that he was claiming adversely to them." Held, that, as against one claiming under the husband, this charge was not erroneous upon the ground that it "was not warranted by the evidence and was calculated to mislead and confuse the jury and because said facts were not matters of law, but was a fact which the jury should have determined from the evidence."
6. Where the title to property was not vested in a decedent at the time of his death, it can not be set apart as a year's support for his widow and minor children, so as to vest title in them. Burckhalter v. Planters Loan Savings Bank, 100 Ga. 428 (28 S.E. 236); Smith v. Smith 101 Ga. 296
(28 S.E. 665); Zeagler v. Zeagler, 190 Ga. 220, 225 (9 S.E.2d 263); Scruggs v. Morel, 22 Ga. App. 93 (95 S.E. 316).
7. Under the preceding rulings, the evidence authorized the inference that the surviving husband of the intestate, after inheriting one eighth undivided interest in the property in question, acquired an additional three-eighths interest by deeds from the children other than the present four plaintiffs, but that he did not acquire any further interest by prescription or otherwise. Accordingly, although it appeared that appraisers undertook to set apart the whole interest to his widow and minor children by a subsequent marriage, the jury were authorized to find in favor of the plaintiffs for the four-eighths undivided interest claimed by them, and for a partition of the land on basis of such interest in them and the remaining one-half undivided interest in such widow and children. In this view, it is unnecessary to determine what effect, if any, should be given to the effort of the ordinary to qualify the appraisers' return at the time of admitting it to record.
8. The evidence being sufficient to support the verdict in favor of the plaintiffs, and no error of law having been committed, the court did not err in overruling the motion for a new trial, as filed by the defendant widow.
9. The following statute and decisions cited for the plaintiff in error do not deal with prescription by a cotenant, and do not require a different conclusion in the instant case. Code § 85-413; Evans v. Baird, 44 Ga. 645; Stringfield v. Stringfield, 143 Ga. 557 (85 S.E. 754).
Judgment affirmed. All the Justicesconcur.
 No. 14361. JANUARY 12, 1943. *Page 253 
In May, 1941, Mrs. Carrie Mandeville and three others filed an application for partition by sale of a house and lot in the city of Wrightsville known as the T. L. Harris home place, alleging that each of the four plaintiffs owned one eighth undivided interest in this property, and that Mrs. T. L. Harris owned the remaining half undivided interest, which had been set apart to her as a year's support from the estate of her deceased husband, Dr. T. L. Harris. Mrs. Harris was notified of the application, and it was agreed that the application might be presented to the judge of the superior court on June 27, 1942. The applicants, hereinafter referred to as the plaintiffs, later amended their petition, and Mrs. Harris, who may be referred to as the defendant, filed a response asserting claim to the entire interest in the property in virtue of the year's-support proceedings, and alleged antecedent prescriptive title in her husband. The following facts appeared, without dispute, from the pleadings:
The property in question was owned by the plaintiffs' mother, Mrs. Sally A. Harris, who died intestate in 1910, owing no debts and leaving her husband, Dr. T. L. Harris, and seven children, including the plaintiffs, as her only heirs at law. Each of these heirs at law thus inherited from Mrs. Harris one eighth undivided interest in the property. Dr. Harris later acquired deeds conveying the interests of the three children other than the plaintiffs, so that he then owned one half undivided interest, while these plaintiffs together owned the remaining four-eighths or a half interest. Afterwards Dr. Harris was married to the present defendant, this being his third marriage, and two children were born to them. He died in December, 1940. In February, 1941, the defendant applied for a year's support for herself and the two children, who are minors, and the appraisers awarded this house and lot and other property to them. The ordinary, in admitting the appraisers' return to record, stated that, no objection having been filed, the return would "stand as the judgment of this court, subject to a claim of one eighth interest" in the house and lot in question by each of four named persons who are now the plaintiffs in this proceeding. *Page 254 
It was contended by Mrs. Harris that the return of the appraisers, which purported to award the entire interest in the property, had the legal effect of so doing, despite the qualification stated in the order of the ordinary. She further contended that although this property was owned by the first wife of Dr. Harris and that as one of her heirs at law he inherited only one eighth interest therein, he nevertheless, after the death of his first wife in 1910, acquired prescriptive title to the entire interest as against the plaintiffs, by actual adverse possession for twenty years before his death in 1940.
In view of the defendant's response and the resulting issue as to title, the application for partition was passed from the preliminary hearing to the next term of court, to be tried before a jury. It was later so tried, and the following evidence was introduced:
Mrs. A. R. Brooks, as a witness for the plaintiffs, testified as follows: "My father had seven children by mother [naming them], and my mother died in 1910. She was living in this home we are talking about when she died. I am familiar with that description of that property. . . That is the property where my mother was living when she died. My father gave that property to her. The property in that deed from U. R. Jenkins to Mrs. Sally A. Harris . . is the property that my mother owned. When my mother died she did not leave a will. There was no administration of her estate. She did not owe any debts against her estate when she died. I was not living in the home place when she died. I was living in Wrightsville, but was married and in my own home. The four youngest children were living there. I gave my interest in my mother's property to my father when the house burned, at the suggestion of my husband. I thought it would be a help to him, and I made him a gift of it. I think the house burned in 1915. My father continued to live in that house on that property, from 1910 to 1915. During that period of time he did not ever claim title to that property. He always considered that we owned it, and it never was mentioned between us, and I voluntarily offered to give him my part. . . The house only burned once, in 1915, and only partly burned then. Dr. Harris was married a second time then. He had not been married very long when it burned. I never asked him for any of the rents or *Page 255 
profits of that property. Papa was left with minor children; the youngest boy was fourteen years old; and we left it in Papa's hands as long as he lived. None of them ever started any claim of title to this property at all until after he died. I did not know that he gave a mortgage to his minor children from the sale of some timber over here in Washington County until we were talking with Mrs. Harris about trying to get a settlement. I had not known about it until then."
Mrs. Emmie Hook Strickland, as a witness for the plaintiffs, testified as follows: "I am familiar with the deed from U. R. Jenkins to my mother. I am familiar with the property you just described. That property is located in Wrightsville. It is the property described in that petition for partition filed in this suit. Mrs. Sally A. Harris was my mother. When she died I was living at home, on this property. There were four of us children living there at that time. I did not ever relinquish my title or claim to this property to my father. I did not ever make a conveyance or deed to him. My father remained in possession of this property because he was my father. He did not ever notify me in any way that he claimed title to all of this property. He did tell me in any way that he my mother's home, after he and his present wife built the home where she lives now. The first time I was in the home, he said, this is Leila's home, and the other place belongs to you all, because it was your mother's. He never did claim to me that he owned the other portion of that property down there. The first time I was ever notified that Mrs. Leila Harris [the present defendant] was claiming all of that property was since his death. I consented for my father to remain in possession of this property as long as he lived."
The plaintiffs tendered, in evidence deed from U. R. Jenkins, dated January 3, 1937, to Mrs. Sally A. Harris, identified as covering the property involved in this suit. No objection.
Mrs. T. L. Harris, a witness for the defendant, testified as follows: "I married Dr. Harris February 28, 1919, more than twenty years ago. I lived with him more than twenty years before he died. When I married him he was living on Marcus Street. I moved into the house with him. He exercised ownership of that house. He did not ever pay any rent or anything to these other children that I know anything about. After we moved out of *Page 256 
there and went to this other place, Dr. Harris collected the rent out of that himself. Not that I know of, none of these four ladies ever called on him for any rent, or claimed title to that property at all. Dr. Harris paid the taxes on it. On August 22, 1932, he gave me a security deed on that same property. That was my money that I loaned him. At that time he held it out to be his property. That [indicating] is the security deed he gave me. This was put on record. These former children did not raise any dispute at all about it." [The defendant here introduced in evidence mortgage from T. L. Harris to Mrs. Leila Harris, dated January 25, 1932, and deed from T. L. Harris as guardian for Mamie Lou Harris, Benjamin R. Harris and Thomas R. Harris.]
"This security deed dated January 25, 1932, made by T. L. Harris, guardian for Mamie Lou Harris, Benjamin R. Harris, and Thomas L. Harris Jr. That money came from sale of timber. Benjamin is nineteen now. Thomas is thirteen, and Mamie Lou has come of age since this was made. They have never been paid this money. . . As to whether or not I knew my husband, T. L. Harris, owned or had title to all of that property, I didn't know anything at all about it, but that it was his all of the time. I never did discuss the title with him. I don't know whether he claimed all of it or half of it. I don't know whether he was living there by permission of these four children of Mrs. Sally Harris. I don't know anything at all about how he claimed title. Yes, sir, I just know that he carried me there and kept me as his wife. As to my hearing him say that he owned all of it, he didn't say anything about it. So far as I know, he did not notify these people that he owned all of it. I don't know whether there was an agreement between Dr. Harris and these people that he pay taxes on this property and remain in possession, or not. If there was such an agreement, I don't know anything about it."
The jury under the charge of the court returned a verdict in favor of the plaintiffs for the four-eighths undivided interest for which they sued, and a decree of partition was entered accordingly. The defendant, Mrs. Harris, filed a motion for a new trial, which the court overruled, and she excepted. The motion consisted only of the general grounds and one ground assigning error on the following charge to the jury: "I charge you, gentlemen of the jury, as a matter of law, that in this case, upon the death of Mrs. T. L. *Page 257 
Harris, the first wife of Dr. Harris, Dr. Harris and the children became joint tenants of the property owned by his deceased wife; and before title by prescription to any part of it could be acquired by Dr. Harris, there would have to be an adverse possession toward such tenants as he was prescribing against, after they had notice brought home to them that he was claiming adversely to them." The movant averred that this charge "was not warranted by the evidence and was calculated to mislead and confuse the jury, and because said facts were not matters of law, but was a fact which the jury should have determined from the evidence."