S03A0978. GIGGER et al. v. WHITE.
(586 SE2d 242)

THOMPSON, Justice.

Appellee Shirley Ann White filed an action to determine fee simple title in a parcel of real property located in DeKalb County, Georgia. After a bench trial, the court determined that White had acquired prescriptive title to the property by adverse possession under color of title. For the reasons which follow, we affirm.

Appellants Frederick, Gurniece, and Beverly Gigger ("the Giggers") are the children of Willie Mae Gigger, who died intestate in 1988. At her death, decedent was married to Walter Cole, who was the stepfather of her children.[1] Decedent owned the subject property, which consisted of a house and land, and each of her heirs at law

---

[*] *Six Flags Over Georgia v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003). See also *City of Jesup v. Bennett*, 226 Ga. 606, 609 (176 SE2d 81) (1970).

[1] The Giggers were all adults at the time, ranging in age from 29 to 36 years.

acquired an undivided one-fourth interest in the property.

The evidence, viewed in favor of the verdict, shows that Cole asked Guernice and Beverly to move out of the house shortly after the death of their mother; neither daughter lived in the house after that nor contributed to its maintenance. Frederick continued to occupy the property but made no mortgage payments and allowed the house to become dilapidated. By 1990 the property had fallen into a state of disrepair, the City of Atlanta Building Department was in the process of condemning the property, and the mortgage was in arrears. At that time, White's father, Henry Weatherspoon, entered into an agreement with Cole to purchase the property "out of foreclosure" and to convey it to White. Both White and Weatherspoon believed Cole to be the sole owner. White contacted the mortgage holder and was informed that an arrearage of $1,229.80 had to be satisfied.

On December 12, 1990, White, Weatherspoon, Cole, and Frederick met and Cole executed a quitclaim deed to the property in favor of White. The instrument was also signed by Frederick as a second grantor. At about the same time, Weatherspoon gave White the money to satisfy the arrearage on the mortgage, and she in turn sent her check for $1,229.80 to the mortgage holder along with a copy of the quitclaim deed. Thereafter, the payment coupons were issued in her name. Within weeks of that transaction, Cole told both Guernice and Frederick that he had conveyed the house to Weatherspoon, and he demanded that Frederick pack up and leave. White testified that she had no knowledge of Frederick's existence until the meeting to execute the quitclaim deed, and that she had no knowledge that the decedent had any other children until this litigation commenced in 2001.

After making substantial improvements to the home, White moved in in January 1992. Cole died in 1994. Over the next seven years, White continued to occupy the house, and pay the mortgage, taxes and other expenses attendant to the property. At no time did the Giggers make an effort to determine whether they had an interest in the property, nor did they contribute anything toward its maintenance.

In 1999 the loan on the property was satisfied in full and White received a cancellation of the security deed and a release of the lien from the mortgage holder, both of which listed the decedent as the property owner. It was then that White learned the house was not titled in her name.

White, who continues to occupy the property, brought the present action against the four heirs at law of the decedent. The Giggers counterclaimed for equitable partition, requesting sale of the property and a division of the proceeds. The trial court made findings that

at all times during the prescriptive period the Giggers were fully cognizant of White's claim to the property, yet never took any action to preserve their rights or attempted to interfere with White's claim of right. The court concluded that White acquired adverse possession under color of title.

1. In several enumerations of error, the Giggers submit that the quitclaim deed to White from Cole was insufficient to constitute color of title.

White claims prescriptive title pursuant to OCGA § 44-5-164. That Code section provides:

> Possession of real property under written evidence of title in conformance with the requirements of Code Section 44-5-161[2] for a period of seven years shall confer good title by prescription to the property against everyone except the state . . . provided that, if the written title is forged or fraudulent and if the person claiming adverse possession had actual notice of such forgery or fraud when he commenced his possession, no prescription may be based on such possession.

> Color of title is a writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used – a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law. . . . It must purport to convey the property to the possessor (to him holding either the corporeal or the legal possession), and not to others under whom he does not hold; it must contain such a description of the property as to render it capable of identification, and the possessor must in good faith claim the land under it. (Punctuation omitted.) *Capers v. Camp*, 244 Ga. 7, 11 (3) (257 SE2d 517) (1979), citing Powell on Actions for Land 340, § 295.

*Ponder v. Ponder*, 275 Ga. 616, 619 (2) (571 SE2d 343) (2002).

In *Smart v. Miller*, 260 Ga. 88 (389 SE2d 757) (1990), this Court held that an administrator's deed which purported to convey fee sim-

---

[2] OCGA § 44-5-161 sets out the elements of adverse possession:
    (a) In order for possession to be the foundation of prescriptive title, it:
    (1) Must be in the right of the possessor and not of another;
    (2) Must not have originated in fraud except as provided in Code Section 44-5-162 [actual or positive fraud];
    (3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and
    (4) Must be accompanied by a claim of right.
    (b) Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party.

ple title, was sufficient color of title, for purposes of acquiring title to property by prescription, even though, unknown to all parties at the time of the transaction, the testatrix did not own the property at the time of her death.[3]

The quitclaim deed to White purported to convey the entire interest in the property and it contained a full legal description as to render it capable of identification. White believed Cole to be the sole owner, and other than Frederick who executed the deed, she had no knowledge of the existence of the children of the decedent, or of any claim that they may have had to the property. And as is discussed in Division 3, infra, White had no knowledge of actual fraud in the quitclaim transaction and thus claimed the land in good faith. Therefore, the writing relied upon by White satisfied the formal requirements set forth in *Ponder*, supra, and was sufficient color of title for purposes of acquiring prescriptive title to the property.

2. The Giggers submit that White acquired only Cole's undivided one-fourth interest in the property, thereby creating a cotenancy among the parties.

A party who asserts a claim of title by adverse possession against a cotenant has the burden of proving not only the usual elements of prescription, see OCGA § 44-5-161, but also at least one of the elements of OCGA § 44-6-123, which provides as follows: "There may be no adverse possession against a cotenant until the adverse possessor effects an actual ouster, retains exclusive possession after demand, or gives his cotenant express notice of adverse possession." See also *Harris v. Mandeville*, 195 Ga. 251 (4) (24 SE2d 23) (1943).

(Footnote omitted.) *Wright v. Wright*, 270 Ga. 530, 532 (512 SE2d 618) (1999). But "[w]hen a person claiming prescriptive title does not enter possession as a cotenant but as owner of the entire estate under color of title, such possession is adverse to those who might be otherwise treated as cotenants, and the party in possession is not subject to the conditions of [OCGA § 44-6-123]." *Mattison v. Barbano*, 249 Ga. 271, 272 (290 SE2d 41) (1982). The undisputed evidence

---

[3] As the *Smart* Court also observed,

We have delineated numerous types of instruments that are treated as color of title, including a void deed by a husband conveying his wife's property, *Street v. Collier*, 118 Ga. 470 (45 SE 294) (1903); a sheriff's deed without an execution, *Beverly v. Burke*, 9 Ga. 440 (1851); a deed executed by one as attorney in fact without authority, *Street v. Collier*, supra; a quitclaim deed, conveying "any rights of the grantor," *Warlick v. Rome Loan &c. Co.*, 194 Ga. 419 (22 SE2d 61) (1942).

*Smart*, supra at 89 (4) (b).

established that White took possession without knowledge of her status as a cotenant, and that she held possession under a deed which purported to convey the entire fee. Accordingly, the conditions of OCGA § 44-6-123 do not apply. *Mattison*, supra.

3. It is asserted that the evidence demands a finding that Weatherspoon and Cole colluded to defraud the Giggers of their interests in the property, and that White participated in the scheme. Thus, the Giggers contend they are entitled to judgment as a matter of law because under OCGA § 44-5-164, no prescription may be based on a written title which is fraudulent. See also *Armour v. Peek*, 271 Ga. 202 (2) (517 SE2d 527) (1999); *Harrison v. Holsenbeck*, 208 Ga. 410, 413 (67 SE2d 311) (1951).

"To defeat prescriptive title, the fraud of the party claiming thereunder must be such as to charge his conscience. He must be cognizant of the fraud, not by constructive but by actual notice." (Citation and punctuation omitted.) *Ponder*, supra at 619 (2). While an inference may be drawn that Cole defrauded the Giggers in the quitclaim deed transaction, the uncontroverted evidence established that White had no knowledge of fraud in the transaction, nor was she aware that others may have had an interest in the property. Thus, there is no merit to this contention.

4. Finally, the Giggers contend that the trial court erred in rejecting their counterclaim for equitable partition, sale of the property, and division of the proceeds. We find no error. All of the testimony confirmed the trial court's findings that the Giggers had knowledge of White's adverse possession during the prescriptive period, but did nothing to secure their rights during that time. See *Cooper v. Aycock*, 199 Ga. 658, 667 (1) (34 SE2d 895) (1945) ("[t]o charge a party with laches in delaying to assert a right, an opportunity to have acted sooner must have existed"). Because the trial court's findings in this nonjury trial are not clearly erroneous, they will not be set aside. OCGA § 9-11-52 (a).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 15, 2003.

*Michael A. Dominy*, for appellants.
*Melvin Drukman*, for appellee.