A05A0717. HARKINS et al. v. CHANNELL et al.
(618 SE2d 129)

ADAMS, Judge.

On July 26, 2002, Robert Harkins and his wife Karen signed an agreement to purchase 12 rental properties in Richmond County for $567,459 from professional realtor and longtime friend Cliff Channell. After problems developed, they brought suit against Channell and his company for fraud. The defendants moved for summary judgment, which the trial court granted, and the Harkinses appeal that decision.

Construed in favor of the nonmovants, the evidence shows that Robert Harkins had sold homes as a licensed realtor during the late 1980s, and he and his wife had begun purchasing rental properties in late 2000. They had acquired 14 properties ranging in price from $19,000 to $115,000 by the summer of 2002. For four years prior to the transaction in question, Harkins had often sought advice on the rental business from Channell, who had 30 years experience and owned his own company, Channell Realty.

By the summer of 2002, Mr. and Mrs. Harkins were looking to acquire more rental property. Channell told Harkins that he owned property in Richmond County that might be of interest. Harkins was enthusiastic, and over the course of several meetings at the Harkinses' home, Harkins and Channell negotiated the details of the transaction, and Channell prepared a package with the lease information for the rental units. Harkins testified that he told Channell he was relying on him with regard to the deal.

At least twice before signing the agreement, Harkins asked whether he could inspect the properties, and while he was not prohibited by Channell from doing so, Channell "strongly urged" Harkins not to disturb tenants with a formal inspection. Purportedly relying on Channell's expertise, Harkins merely performed a "drive-by" inspection of the properties, after which, he admitted, he was not interested in purchasing several of them. Nevertheless, Channell would only agree to sell the properties as a group, and eventually Harkins consented to this condition. Harkins also claims that Channell assured him that all the properties were "ready to rent," which he interpreted as "ready to put a sign out on the yard," and that all roofs

on the properties were in good condition. The Harkinses also allege that Channell made representations about the expected rental income.

Eventually Channell presented a proposed contract to the Harkinses, who submitted it to their lawyer for review. In response to his advice, the Harkinses requested three changes, but it is not clear from the record when this request was made. The most significant change was to delete the words "as is" and replace them with "rentable" or "rent ready" in the following sentence:

> Purchasers hereby accept the property in an "as is" condition and Seller will be responsible for no repairs hereafter.

On July 26, the parties met at the Channell Realty office. Mr. and Mrs. Harkins testified that Channell agreed to the changes, that the parties initialed the changes, and that the document they signed that day showed the handwritten changes. But the only executed document in the record does not show two of the changes, including the "as is" change, and the Harkinses admit that their signatures are on that document. Rachel Tiller, the leasing agent for Channell Properties, was present at the signing and notarized the agreement. Mr. Harkins asserts that his signature was obtained by deception. But he could not say whether the agreement was modified subsequent to the signing. Channell denies the existence of any second, altered contract, and neither party has produced a signed, modified version.

Following the signing, the Harkinses collected rent from the tenants and made payments to Channell from August 2, 2002 through December 2003. On January 8, 2003, they filed a verified complaint alleging fraud and misrepresentation; they sought damages, reformation of the contract, a declaratory judgment regarding the meaning of certain provisions of the agreement, punitive damages, and attorney fees. They claimed that the properties were in fact in substandard condition, half of their roofs needed repair, and they did not generate the rental income represented by Channell.

One year later, on January 14, 2004, Harkins returned to Channell the keys and leases, but not the collected rental payments, and on March 8, 2004, they filed an amended complaint in which they sought to rescind the agreement and made claims for money had and received, Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, punitive damages, and attorney fees. In an affidavit, Harkins averred that he rescinded the transaction "because we simply could not go on with the continual outlay for repairs to the sub-standard condition of the properties," and he further indicated that they rescinded to mitigate their damages.

Finally, Channell claims the terms of the agreement clearly stated that the Harkinses were responsible for all 2002 property taxes, and he counterclaimed for payment. Channell did not move for summary judgment on this claim and it is not before us.

The Harkinses contend the trial court erred by granting summary judgment. They claim issues of fact regarding whether they intended to affirm the agreement by first seeking to reform it, whether the defendants fraudulently induced them to sign the agreement, whether they were deceived into signing the non-modified agreement, and whether equity and good conscience dictate that their money be returned. Channell and his company contend that the fully executed agreement is the sole agreement between the parties, that it provides the properties were sold on an "as is" basis, and that it provides that promises not included in the agreement are not binding on the parties.

1. "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. [Cits.]" *Ainsworth v. Perreault*, 254 Ga. App. 470, 471 (1) (563 SE2d 135) (2002).

The Harkinses contend they have a claim for rescission and argue that they never affirmed the contract because they asked to reform the contract then asked to rescind. But this reasoning is flawed because to seek reformation is to affirm the contract:

> Asking the reformation of an instrument is in no sense the repudiation of a contract; but is, on the contrary, an effort to affirm the real contract which the writing, when reformed, will evidence, and the party seeking such reformation would be entitled to retain any amount which he had rightfully received thereunder, both parties still resting under any unfulfilled obligations which the contract may impose.

*Dannelly v. Cuthbert Oil Co.*, 131 Ga. 694, 700 (1) (63 SE 257) (1908). By seeking reformation, the Harkinses did not request the court "either to rescind or ignore the writing, but to reform it, and in its reformed and proper condition to preserve, recognize and enforce it." Id.

Accordingly, the Harkinses unambiguously elected to proceed under the contract, and they are bound by this decision. See, e.g., *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 910-911 (2) (600 SE2d 841) (2004) (by taking action inconsistent with repudiation of the transaction plaintiff lost right to rescind contract); *Holloman v. D. R. Horton, Inc.*, 241 Ga. App. 141, 146-147 (3) (524 SE2d 790) (1999) (original complaint affirming contract constituted election of

remedies and waiver of rescission claim). Furthermore, the Harkinses first sought to rescind on January 14, 2004, when they returned the keys, almost 18 months after entering into the agreement and over one year after their initial complaint. Prior to that time, the evidence is undisputed that they continued to collect rent, pay Channell, and even brought suit on the contract. They therefore failed as a matter of law to promptly rescind the agreement, and their claim for rescission must fail.

2. "[W]hen a home buyer elects to affirm a purchase agreement which contains a merger or entire agreement clause, he or she is precluded from recovering for the seller's alleged fraudulent inducement based on misrepresentations made outside the contract." (Footnote omitted.) *Herman Homes, Inc. v. Smith*, 249 Ga. App. 131, 132 (1) (547 SE2d 591) (2001). The agreement at issue here contains a merger clause:

> The contract constitutes the sole and entire agreement between the parties and no modification of this contract shall be binding unless it is in writing, attached hereto and signed by all parties to this agreement. Representations, promises or inducements not included in this contract shall not be binding upon any party hereto.

Accordingly, any remaining claim of misrepresentation or fraud based on statements made prior to the agreement must fail, including representations about the expected rental income and the condition of the properties and their roofs.

3. The Harkinses have not presented any argument or citation of authority in support of their Georgia RICO claim and therefore it is deemed abandoned. See Court of Appeals Rule 25 (c) (2).

4. "Under the common law doctrine of money had and received, recovery is authorized against one who holds unspecified sums of money of another which he ought in equity and good conscience to refund." *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2) (551 SE2d 765) (2001). The only remaining actionable allegation is that Channell somehow altered the signed agreement to remove the handwritten addition of the word "rentable" instead of "as is."[1]

The Harkinses' failure to inspect the properties to determine whether they were in rentable condition is fatal to their claims:

---

[1] The Harkinses do not contend that the remainder of the same paragraph was altered; it states:

> Seller will be responsible for no repairs hereafter. Any repairs required after closing will be paid in full by the Purchasers. Sellers have made absolutely no warranties concerning the condition of the property.

[W]here one purchasing real estate [had] the opportunity, as the plaintiff here did, of examining it before buying, but, instead of doing so, he voluntarily relies upon the statements of the vendor concerning the character and value, the contract will not be rescinded or set aside, or the purchase price of the land abated, because of the falsity of such statements, unless some fraud or artifice was practiced by the vendor to prevent such examination; and that this is true even though the vendee in buying the land may have acted upon the misrepresentations of the vendor or his agents.

*Rush v. Autry*, 210 Ga. 732, 733 (1) (82 SE2d 866) (1954). Although Channell discouraged Harkins from inspecting the properties, he did not prevent him from doing so by fraud or artifice. Moreover, Harkins drove by the properties and decided to purchase them even though he was not interested in them following his drive-by inspection. " 'Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of the parties.' [Cit.]" *Webb v. Rushing*, 194 Ga. App. 732, 733 (2) (391 SE2d 709) (1990). See also *Westminster Holdings v. Weatherspoon*, 237 Ga. App. 819 (517 SE2d 80) (1999) (buyer waived termite damage repair requirement by closing despite seller's failure to provide documentation of repair as required by agreement).

 *Judgment affirmed. Ellington, J., concurs. Smith, P. J., concurs in judgment only.*

DECIDED JULY 15, 2005.

*James D. Hyder, Jr.*, for appellants.
*Warlick, Tritt, Stebbins & Hall, Charles C. Stebbins III*, for appellees.