## S06A2137. MATTHEWS et al. v. CROWDER et al.
(642 SE2d 852)

HINES, Justice.

Johnny Matthews, and others, appeal from the grant of summary judgment to Jefferson Crowder, and others, in this dispute over ownership of an 80-acre tract of land in Paulding County. Finding that the grant of summary judgment was proper, we affirm.

On September 12, 1964, Della Crowder executed a purported warranty deed conveying the land to one of her four daughters, Ethel Crowder. The deed, which was recorded, recited: "This deed shall not take effect until the death of the grantor. At that time it shall have full force and effect." Della Crowder died intestate in 1966; she was survived by Ethel Crowder and three other daughters, Jessie Crowder, Willie Crowder, and Minnie Crowder.

In 1968, Ethel Crowder deeded the property to her offspring, Jefferson William Crowder, James Douglas Crowder, and Brenda Sue Crowder ("Crowders").[1] This deed, also recorded, recited that Ethel Crowder was "the daughter of Mrs. Della Crowder who departed this life on the 20th day of September, 1966 leaving grantor as the owner in fee simple of the above described property." Ethel Crowder lived on the property until her death in 1993; Jefferson Crowder has lived there all his life.

The heirs at law of Della Crowder's other three daughters (Jessie Crowder, Willie Crowder, and Minnie Crowder) comprise the Matthews set of litigants ("Matthewses").[2] In 2004, the Matthewses

---

[1] In 1980, James Douglas Crowder executed a quitclaim deed of his interest in the property in favor of his children, Nancy Ardella Crowder and Anita Beatrice Crowder, and in 1990, Brenda Sue Crowder executed a warranty deed, stated to be of a one-third interest in the property, in favor of her son, Shane Lee Fields; both deeds were recorded. Fields conveyed his one-third interest by recorded warranty deed to his father, Edward M. Fields, in 1992. Jefferson William Crowder, Nancy Ardella Crowder, Anita Beatrice Crowder, and Edward M. Fields constitute the Crowder litigants.

[2] There are 22 members of the Matthews group of litigants; all claim their interests by

learned that the Crowders were preparing to sell the property to a party outside the family, and sought a declaratory judgment to declare the rights of the various parties, an injunction against the pending sale of the property, and an equitable accounting, based on the claim that they and the Crowders were cotenants of the property. The Crowders counterclaimed for a declaratory judgment to declare that they were the owners of the property, and moved for summary judgment as to all issues, which was granted. The Matthewses appeal.

1. The Matthewses assert that the 1964 document did not serve as a deed to effectively convey title from Della Crowder to Ethel Crowder. That is correct. The controlling language in the 1964 document is that "[t]his deed shall not take effect until the death of the grantor. At that time it shall have full force and effect." Thus, it specifically states that the conveyance is not to have any effect until Della Crowder's death. Accordingly, the document did not convey present rights in 1964, was testamentary in character, and cannot be upheld as a valid deed. *Gardner v. Thames*, 223 Ga. 378 (154 SE2d 926) (1967).

It is undisputed that, as the 1964 document did not convey title, upon Della Crowder's 1966 death intestate, Ethel Crowder inherited the property together with her sisters Jessie Crowder, Willie Crowder, and Minnie Crowder, as cotenants, and that the Matthewses represent the successors in title of Jessie Crowder, Willie Crowder, and Minnie Crowder.

2. In their counterclaim, the Crowders contended that they had established title by adverse possession under color of title for a period of more than seven years. See OCGA § 44-5-164. Although the 1964 document was not effective as a deed, an invalid deed can operate as color of title for purposes of the Crowders' adverse possession claim. *Gigger v. White*, 277 Ga. 68, 70-71 (1) (586 SE2d 242) (2003).

The Matthewses responded that no claim for adverse possession can be recognized because under OCGA § 44-6-123, "[t]here may be no adverse possession against a cotenant until the adverse possessor effects an actual ouster, retains exclusive possession after demand, or gives his cotenant express notice of adverse possession." Although the Crowders point to several facts that they contend demonstrated ouster or express notice, it is not necessary to address whether ouster or express notice was established as a matter of law.

When a person claiming prescriptive title does not enter possession as a cotenant but as owner of the entire estate

intestate succession. It is undisputed that they are the heirs at law of Della Crowder.

under color of title, such possession is adverse to those who might be otherwise treated as cotenants, and the party in possession is not subject to the conditions of OCGA § 44-6-123.

(Citation and punctuation omitted.) *Gigger*, supra at 71 (2). Ethel Crowder held title to the property under color of the 1964 document from Della Crowder, which purported to convey the entire estate. The current Crowder titleholders in turn hold title through the 1968 deed from Ethel Crowder, which purported to convey the entire estate. Thus, even if the 1964 deed does not operate as color of title for purposes of adverse possession, the 1968 deed clearly is color of title for the Crowders. This remains so even if Ethel Crowder did not have full title in 1968; it is not necessary that her title be established, for although there might be "want of title in the person making" the 1968 deed, that deed still operates as color of title. *Gigger*, supra at 70 (1).

Nonetheless, the Matthewses contend that deposition evidence raises a jury question as to whether either Ethel Crowder or the current Crowder titleholders recognized that they held the property as cotenants with the Matthewses, which would take the situation out of the above exception to OCGA § 44-6-123. See *Mattison v. Barbano*, 249 Ga. 271, 272 (290 SE2d 41) (1982). But, that is not the case. Rather, the depositions to which the Matthewses point indicate that the understanding of various family members was that Della Crowder gave the property *to Ethel* with the intention that it remain "in the family" and not be sold. This does not suggest a belief on Ethel's part that she held the property as a cotenant; it merely reflects the hope of Della Crowder that the property would continue to be owned by family members. This comports with testimony that Ethel "hoped" the property would not be sold out of the family, and with Ethel's action of deeding the property to her offspring.[3]

Further, the depositions of the Matthews litigants show that they behaved toward the property as though they had no ownership interest; they never claimed such an interest, including when the Department of Transportation took a portion of the land for a road widening in 1995 and named the Crowders as owners. Indeed, one Matthews litigant attempted to purchase a portion of the land from

---

[3] While the Matthewses point to testimony that Jefferson William Crowder enlisted one of the Matthews litigants in an effort to prevent an earlier sale of the property by the other Crowder titleholders, all this testimony reveals is that Jefferson William Crowder sought the help of his cousin in persuading the other Crowder titleholders not to sell, and that he expressed the wish that the land remain in the same condition as it was in his youth when it was used as a farm.

the Crowder titleholders.[4] There was no evidence that either Ethel or the current Crowder titleholders recognized any status as co-owners with the Matthewses, or vice versa. Id.

Finally, the Matthewses maintain that the exception to OCGA § 44-6-123 does not apply because the 1968 deed did not convey to the Crowders the "entire estate," see *Gigger*, supra, but reserved a life estate for Ethel Crowder. They rely upon the statement in the 1968 deed that "[t]he grantor hereby reserves the right to continue to live in the house located on the above described property for the remainder of her life." It is not necessary to determine whether the language created a life estate or merely a license, as the Crowders contend. See *Fox v. Washburn*, 264 Ga. 617, 619 (3) (449 SE2d 513) (1994). Compare *Day v. Tribble*, 233 Ga. 242 (2) (210 SE2d 764) (1974). At the latest date, the Crowders came into full title upon Ethel's death in 1993, and prescription then began to run. See *Roach v. Gwinnett County*, 273 Ga. 741 (545 SE2d 912) (2001); *Hill v. Lang*, 211 Ga. 484, 489-490 (2) (86 SE2d 498) (1955); *Silkes v. Moxley*, 201 Ga. 76, 81 (38 SE2d 671) (1946). As no challenge respecting the Crowders' title was raised until this suit was initiated in 2004, the seven-year period of prescription had run.

The trial court did not err in granting summary judgment to the Crowders.

*Judgment affirmed. All the Justices concur.*

CARLEY, Justice, concurring.

I agree with Division 1 of the majority opinion that the purported deed from Della Crowder to Ethel Crowder "did not convey present rights in 1964, was testamentary in character, and cannot be upheld as a valid deed. [Cit.]" I further concur in Division 2, including the ruling that "the 1968 deed clearly is color of title for [Appellees]." I write separately, however, to clarify that, under Georgia law, a testamentary "deed," such as the 1964 document, cannot possibly constitute color of title.

> "Color of title is a writing upon its face professing to pass title, but which does not do it, either from want of title in the person making it, or from the defective conveyance that is used — a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law. . . . It must purport to convey the property to the possessor . . . ."

---

[4] This occurred during the life of Ethel Crowder; the response was that the land could not be sold.

*Gigger v. White*, 277 Ga. 68, 70 (1) (586 SE2d 242) (2003). "A writing that does not on its face profess to pass title, but expressly states that title will be conveyed at a future time and upon certain conditions, is not sufficient to constitute color of title." *Shippen v. Cloer*, 213 Ga. 172, 174 (2) (97 SE2d 563) (1957). Whether a document constitutes sufficient color of title depends on the determination of any claim that it is testamentary in nature. *Westmoreland v. Westmoreland*, 92 Ga. 233, 235-236 (1) (17 SE 1033) (1893). If the instrument is properly construed in favor of the alleged adverse possessor as a present conveyance, then it is a sufficient color of title. *Westmoreland v. Westmoreland*, supra (construing an ambiguous document in favor of occupant of land). However, an instrument cannot constitute color of title where, as here, it expressly states that it will not take effect until a future time, upon condition of the purported grantor's death. See *Shippen v. Cloer*, supra. Compare *Westmoreland v. Westmoreland*, supra. A reading of the 1964 document in this case by one not skilled in the law would "readily disclose[ ] that it contemplates a conveyance of title at a future date . . . , and by its terms no title was intended to pass thereby." *Shippen v. Cloer*, supra at 173 (2). Therefore, since the majority correctly determined that the 1964 document was testamentary in nature and that it failed to convey present rights, it cannot be relied on as color of title. However, because the 1968 deed does operate as color of title, I fully concur in the affirmance of the trial court's judgment.

DECIDED MARCH 28, 2007.

*Moore, Ingram, Johnson & Steele, John H. Moore, J. Kevin Moore*, for appellants.
*Lane & Sanders, Thomas C. Sanders, Glen E. Stinson*, for appellees.