**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 21, 2013**

# In the Court of Appeals of Georgia

A12A2430. PENTAGON PROPERTIES, INC. et al. v. WHEAT et al.   DO-113

DOYLE, Presiding Judge.

Pentagon Properties, Inc. ("PPI"), and Boyd Roane, Inc. ("BRI"), appeal the trial court's denial of their motion for summary judgment and the final judgment in their dispossessory action against Charles and Nicole Wheat. We reverse and remand, for the reasons that follow.

Viewed in favor of the verdict,[1] the record shows that in 2001, the Wheats[2] signed a lease-purchase agreement for a mobile home owned by PPI and located in Cedar Village Mobile Home Community, which was owned and managed by BRI.

---

[1] See *Gigger v. White*, 277 Ga. 68, 69 (586 SE2d 242) (2003).

[2] The agreement was signed by Nicole Baker, who is referred to in this opinion by her current name, Nicole Wheat.

Under the agreement, the Wheats were required to pay monthly lease payments in the amount of $375 to PPI and lot fees and utility costs to BRI. The agreement provided for a lease term, after which the Wheats would have the option to purchase the home for a stated sum payable over 12 months. The agreement also contained a merger clause, wherein the parties agreed: "This lease and any exhibits attached hereto contain the entire agreement of the parties[,] and no representations, inducements, promises[,] or agreements, oral or otherwise, between the parties not embodied herein by a written amendment executed by both parties shall be of any force or effect."

In 2006, Cedar Village[3] filed a dispossessory action against the Wheats, alleging that they had failed to make required payments and thus breached the terms of the agreement. The Wheats filed a counterclaim, asserting that the lease-purchase agreement they signed required them to make $375 lease payments for five years (with a one year purchase option at the end of the lease period) and that Cedar Village changed the lease term to ten years, requiring them to make $375 lease payments for ten years before electing the purchase option. The Wheats sought damages and an order directing Cedar Village to transfer title of the mobile home to them in May

[3] PPI and BRI both did business in the name of Cedar Village.

2007. The Wheats also moved to transfer the case to superior court, which motion was granted.[4]

Following discovery, BRI and PPI moved for summary judgment, arguing that the Wheats were bound by the four corners of the agreement, could not vary the agreement by parol evidence, and had not paid required lot and utility fees. The trial court denied the motion, finding issues of material fact, and the case proceeded to a bench trial.

Nicole Wheat testified that she and her husband met with Patti Roane, the PPI representative, in May 2001 and agreed to a lease-purchase of a mobile home with a lease term of five years (plus one extra year for the purchase option). According to Nicole, Roane printed out a lease-purchase agreement that did not have the dates and the year "plugged in" and showed it to the Wheats, explaining what the completed contract would say, including the five-year term. Nicole testified that the Wheats signed the signature page of the incomplete contract, and Roane told them that they would get a copy of it once she "put it all together." Later, during the first week of June 2001, Nicole obtained a copy of the contract, and she put it away without

---

[4] The superior court subsequently entered an order substituting PPI and BRI as counterclaim defendants in the place of Cedar Village.

reviewing it. Then, as the end of the five-year term approached, Nicole looked at the contract and saw that it contained a ten-year term.

Roane testified that the Wheats signed two original completed contracts, both of which contained the agreed upon ten-year lease term, and she denied that she ever showed them an incomplete contract. The lease-purchase agreement admitted into evidence during Roane's testimony contained a ten-year lease term.[5]

At the conclusion of the evidence, PPI and BRI sought a dispossessory order and back payments for the mobile home, lot rent, and water. The trial court orally announced that it did not find Roane credible, noting the unexplained discrepancies between the two agreements introduced by the parties and Roane's assertion that

---

[5] The two lease-purchase agreements admitted into evidence were not identical; they varied with regard to a life insurance provision. The contract admitted during Nicole's testimony contained a provision requiring the Wheats to obtain life insurance listing PPI as the beneficiary in the amount of $24,000; the amount was typed in to the contract. In the copy of the contract introduced during Roane's testimony, the numerical value of the required insurance amount was "$xx,xxx," and there was a handwritten notation that stated "$24,000.00 – chg. in computer pr 5-15-01." Roane, who testified before Nicole testified and prior to the introduction of the Wheats' copy of the agreement, denied that there was a copy of the agreement that had the $24,000 amount typed in. Both copies of the agreements, however, contained ten-year lease terms.

4

Cedar Village never entered into five-year leases.[6] The trial court concluded that the Wheats and Roane orally agreed to a five-year lease, but Roane induced them to sign a blank lease-purchase agreement and subsequently filled in the blank with a ten-year lease term. As a result, the trial court ordered PPI to transfer title of the mobile home to the Wheats.[7]

1. PPI and BRI contend that the trial court erred by denying their motion for summary judgment, arguing that the Wheats were not entitled to vary the terms of the valid written contract and that parol evidence was inadmissible. "After verdict and judgment, [however,] it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case."[8] "Our Court has recognized a limited exception to this rule in

---

[6] During cross-examination, Roane denied that Cedar Village ever agreed to five-year lease terms, but the Wheats' attorney introduced copies of two five-year lease-purchase agreements with other Cedar Village tenants, one of which was signed by Roane.

[7] The court also ordered, however, that because the Wheats had failed to pay all of the lot rent and utility bills owed, the clerk of court should pay to BRI $5,631 of the money paid into the court registry by the Wheats and return the remaining $644 to the Wheats. The court's ruling on past due lot rent and utility bills is not at issue on appeal.

[8] (Punctuation omitted.) *Kicklighter v. Woodward*, 267 Ga. 157, 162 (4) (476 SE2d 248) (1996).

cases in which the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial."[9] Here, the issue of parol evidence was raised during the trial. Therefore, this enumeration presents no basis for reversal.

2. PPI and BRI argue that the trial court erred by entering judgment in favor of the Wheats because they are bound by the terms of the written lease-purchase agreement. We agree.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. Where a party elects to rescind the contract, he must do so prior to filing the lawsuit."[10]

Here, pretermitting whether the fraud alleged by the Wheats is the type of fraud that allows a party to rescind a contract,[11] they did not tender rescission of the lawsuit

---

[9] (Punctuation omitted.) *Wellons, Inc. v. Langboard, Inc.*, 315 Ga. App. 183 (1) (726 SE2d 673) (2012).

[10] (Citation and punctuation omitted.) *Novare Group, Inc. v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011), quoting *Ekeledo v. Amporful*, 281 Ga. 817, 819 (1) (642 SE2d 20) (2007).

[11] See *Novare*, 290 Ga. at 188-189 (2) ("Statements that directly contradict the terms of the agreement or offer future promises simply cannot form the basis of a fraud claim for the purpose of cancelling or rescinding a contract. In fact, the only type of fraud that can relieve a party of his obligation to read a written contract and

6

after receiving a copy of the written agreement in 2001, after discovering the ten-year lease term in the agreement, or at any time thereafter.[12] Instead, the Wheats continued to live in the mobile home and, in their subsequent counterclaim to the dispossessory action, they sought to proceed under the contract, asking the trial court to reform it to reflect that the parties agreed to a five-year lease.[13] As a result, they are bound by the written terms of their agreement. When a purchaser elects to affirm a purchase contract that contains a merger clause, he or she is "is precluded from recovering for the seller's alleged fraudulent inducement based on misrepresentations made outside

---

be bound by its terms is a fraud that prevents the party from reading the contract.") (citation omitted). See also *Hall v. World Omni Leasing, Inc.*, 209 Ga. App. 115, 117 (2) (433 SE2d 297) (1993) ("'If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it.'"), citing *Fore v. Parnell-Martin Co.*, 192 Ga. App. 851, 853 (386 SE2d 723) (1989).

[12] See OCGA § 13-4-60 ("A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must *promptly*, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.'") (emphasis supplied).

[13] See *Harkins v. Channell*, 274 Ga. App. 478, 480 (1) (618 SE2d 129) (2005) ("'Asking [for] the reformation of an instrument is in no sense the repudiation of a contract; but is, on the contrary, an effort to affirm the real contract which the writing, when reformed, will evidence, and the party seeking such reformation would be entitled to retain any amount which he had rightfully received thereunder, both parties still resting under any unfulfilled obligations which the contract may impose.'").

the contract."[14] Accordingly, the trial court erred by reforming the contract to reflect the ten-year lease term and by failing to enter judgment in favor of PPI and BRI.

We are aware of the harsh result in this case, given the evidence supporting the trial court's conclusion that PPI's representative induced the Wheats to enter into a contract containing a blank lease term and then filled in the blank in a manner inconsistent with the parties' agreement. Nevertheless, for the foregoing reasons, the Wheats cannot prevail in this case, which stands as an example of the perils of signing an incomplete document.

This case is reversed and remanded to the trial court for entry of judgment consistent with this opinion.

*Judgment reversed. Boggs, J., concurs; Andrews, P. J., concurs in judgment only.*

---

[14] Id. at 481 (2). See also *Novare*, 290 Ga. at 190 (3).